Jacob Goller, as President of the First Neustadter Congregation Sick and Benevolent Association, Plaintiff, *v.* Abraham Stubenhaus et al., Defendants.

(Supreme Court, New York Special Term, May, 1912.)

Associations — organization and status — formation of municipal association — powers and rights of association — by-laws and regulations, — religious societies.

The evidence in an action by plaintiff, claiming to be the duly elected president of an unincorporated voluntary association organized for religious worship and benevolent purposes and governed not by a written constitution but by resolutions adopted

from time to time, to restrain defendant S and his associates, members of said association, considered, and held to establish:

That plaintiff is not the duly elected president of the association; that defendant S and his associates continued in office, though no resolution to that effect was offered or adopted, and that they did not aspire to acquire and appropriate to their own use the property of the association; that, as the adoption of a resolution that a cemetery lot and all other property of said association should be sold was disputed by plaintiff and his faction, the defendants should be restrained from selling and disposing of such property until the views of the members relating thereto could be ascertained at a meeting, regular or special, upon due notice to all members; that the removal of certain personal property consisting of scrolls, prayer-books, etc. by S to his apartments was in good faith to save the expense of storage after the expiration of the lease of the hall in which the congregation worshipped; that, while the sale of a cemetery plot by S to one not a member of said association was justified by resolution, the further sale of burial lots except to members should be discontinued until further order of the court.

ACTION to restrain the defendants from interfering with the rights and the property of the plaintiff's association.

Sophie Mayer, for plaintiff.

Harry Stackell, for defendants.

GIEGERICH, J. The action is to enjoin and restrain the defendants from interfering with the rights and property of the First Neustadter Congregation Sick and Benevolent Association in any manner whatsoever; from using the name and seal of the said congregation, and from selling and disposing of or incumbering the property of the same, be it real or personal, and from disturbing the meetings of the congregation, and for such other and further relief in the premises as to the court may seem just and proper. The amended complaint alleges that the First Neustadter Congregation Sick and Benevolent Association is a voluntary association consisting of seven or more members and organized for religious worshipping and benevolent purposes; that the plaintiff is its duly elected president; that the defendants are members of the

congregation; that the congregation is the owner of certain personal property consisting of scrolls, prayer-books, prayer-shawls, a congregation seal and other paraphernalia, books and papers, and real property consisting of burial grounds for the burial of members of the congregation and their families; that in order to disrupt the organization and to appropriate its valuable property and rights the defendants have conspired together and threatened to and did perpetrate certain unlawful acts, viz.: *First.* That the defendant Abraham Stubenhaus and his accomplices held several meetings in the month of January at which, by intimidation, threats and physical force, they declared themselves elected officers of the congregation in spite of the fact that no nomination nor election was held at such or any other meetings. *Second.* That the defendants took the personal property of the congregation and placed the same in the house of the defendant Abraham Stubenhaus and threatened to sell the same and to appropriate the proceeds to their own use and benefit. *Third.* That, contrary to the provisions of the by-laws of the congregation that the burial grounds owned by it should be used only for the burial of its members and their families, the defendants threatened to sell and give away plots for graves in the said burial grounds, and threatened to give permission to persons other than the members of the congregation and their families to be buried therein. The answer of the defendant Stubenhaus, by its failure to deny, admits the allegations of the amended complaint as to the congregation being a voluntary association, and that the defendants were members of the congregation at the times alleged in the amended complaint. The answer in effect denies the other allegations of the amended complaint and alleges, as a separate and distinct defense, that the plaintiff, Jacob Goller, is not, and at the time of the commencement of the action was not, the president or treasurer of the voluntary association referred to in the amended complaint, and that the congregation is not and was not at any time a body corporate and has no legal capacity to sue. The answer, for a second separate and distinct defense, alleges that at all the times mentioned in the amended complaint the defendant was and

Supreme Court, May, 1912.          [Vol. 77.

still is a member of a certain voluntary association known as the First Neustadter Congregation Sick and Benevolent Association, which is composed of more than seven members, and which the defendant believes is the voluntary association referred to in the amended complaint and that at no time prior to or since the commencement of the action was any resolution adopted by the members of the voluntary association or by a majority of them authorizing or empowering Jacob Goller hereinabove named, or any other person or persons, to institute or maintain this action; nor has the institution or the maintenance of this action been at any time ratified or confirmed by the members of said voluntary association, or a majority of them. It is very much to be deplored that an association organized for the very worthy purposes above stated should be torn by internal dissensions. So far as I can gather from the evidence, when the troubles arose in January, 1909, the congregation had but sixteen members in good standing and only $43.29 in cash in its treasury. Although the congregation owns a plot in the Mount Zion Cemetery for the burial of its members and their families, the purchase price thereof, viz., $510, has not been fully paid, there still remaining due and unpaid installments and interest amounting to $247.87. Notwithstanding all this the members of both factions are disinclined to adopt the suggestions offered by me that steps be taken to incorporate the congregation under the Religious Corporations Law; or, if the members did not favor its incorporation, that an election of officers be held in the near future. I regret exceedingly that all efforts to reunite them have been unavailing. The initial question to be decided is which of the rival claimants was the lawful president of the congregation when this action was commenced? In passing upon such question it should be pointed out that the title to office is not being tried, but the determination of such question is necessary in order to fix the status of the parties with a view of deciding whether or not the injunctive relief prayed for should be granted; for if neither claimant was the president at the time referred to the action cannot be maintained, as will be seen from a reading of section 1919 of the Code of Civil Procedure, which

provides: "An action or special proceeding may be main-
tained by the president or treasurer of an unincorporated
association, consisting of seven or more persons, to recover
any property, or upon any cause of action, for or upon which
all the associates may maintain such an action or special pro-
ceeding by reason of their interest or ownership therein, either
jointly or in common. An action may likewise be maintained
by such president or treasurer to recover from one or more
members of such association his or their proportionate share
of any moneys lawfully expended by such association for the
benefit of such associates, or to enforce any lawful claim of
such association against such member or members. An
action or special proceeding may be maintained against the
president or treasurer of such an association to recover any
property, or upon any cause of action for or upon which the
plaintiff may maintain such an action or special proceeding
against all the associates by reason of their interest or owner-
ship or claim of ownership therein, either jointly or in com-
mon, or their liability therefor, either jointly or severally.
Any partnership or other company of persons which has a
president or treasurer is deemed an association within the
meaning of this section." This brings up the question
whether or not at the time of the alleged elections the congre-
gation was governed by a written constitution or by-laws,
on which point the evidence is conflicting. The plaintiff's
witnesses testified that a constitution and by-laws were
adopted, and were written out in a book which the defend-
ants told them had been lost. This was denied by the latter,
who, as well as the witnesses called by them, denied that any
constitution or by-laws was ever adopted and that such book
ever existed. The minute book of the congregation was pro-
duced upon the trial, and the first mention of a constitution
is made in the minutes of the meeting of May 12, 1906, when
a committee was appointed to draft a constitution. This is a
sufficient answer to the contention of the plaintiff that there
was a written constitution prior to the time last mentioned.
The minutes of the meetings of the congregation since that
time fail to disclose any report of such committee, nor do
they show that a constitution was ever adopted. On this issue

3

I find that the congregation was not governed by a written constitution, but by resolutions which were adopted from time to time. We must therefore look to such resolutions and to the usages of the congregation for guidance as to the time and manner of conducting elections of officers and their tenure of office. As is said in 3 American and English Encyclopedia of Law (2d ed., p. 1070) : " Officers may be elected in the manner prescribed in the constitution of the association or the by-laws, in pursuance thereof, and not legally otherwise, unless it so happens that no such provision has been definitely made, in which case usage may be allowed to furnish a provision or a practical interpretation of an indefinite one." All the witnesses agree that according to the rules and usages of the congregation the term of the various officers was six months, and that elections were held on the second and fourth Saturdays of the months of January and July. The regular meetings of the congregation were held on the second and fourth Saturdays of each month. The witnesses for both parties agree that nominations for officers are to be made at three separate meetings, the election taking place at the same meeting when nominations are made for the third and last time. This is borne out by the minutes of the congregation, which show that as far back as 1905 nominations for officers were made at three different and successive regular meetings, the last taking place at the same time when the elections were held. The defendant Stubenhaus claims that he was re-elected president of the congregation at a regular meeting held on January 16, 1909. According to the minutes of the congregation he was first elected as such president on January 12, 1907, fourteen votes being cast for him and seven for Jacob Goller, the plaintiff in this action. He appears to have been re-elected without opposition for the second and third terms, but when he was elected for a fourth time he was opposed by one Reiss, who received five votes as against eleven cast in his favor. There is an irreconcilable conflict of evidence as to what transpired at the meeting of January 16, 1909, at which the defendant Stubenhaus claims to have been elected for the fifth time. The defendant's witnesses testified that the members were notified in writing that nom-

inations for officers would be in order at the various meetings which they were requested to attend. The plaintiff and his witnesses testified that notwithstanding such notification the defendant Stubenhaus, as the presiding officer, would not entertain any nominations at the meeting of January 16 or at either of the two meetings which preceded it. The minutes of the meeting of January 16, 1909, claimed to have been kept by the then recording secretary, one Freedman, contain the following entry: " It was resolved by all the members that all the old officers continue in office until the first day of July, 1909." Freedman was not called as a witness upon the trial, it being undisputed that he was in Europe when it took place. The plaintiff claims that the minutes of such meeting were not written by Freedman, but by some third person subsequent to the meeting. If the testimony of the witnesses called by the plaintiff be given any credence whatever, such minutes are wholly at variance with the actual occurrences of the evening in question. The plaintiff claims that at such meeting he and his followers demanded of the defendant Stubenhaus, as the presiding officer, that the congregation proceed to the nomination of candidates for the various offices, which, the plaintiff and his witnesses testified, the said defendant refused to do, and they further testified that no election of officers took place at the meeting of January 16, which was held in the defendant's apartments, and that when at a subsequent meeting viz., on January 30, which was also held in the defendant's apartments, the minutes of the preceding meeting were read, they protested against that part which stated that it was resolved that the old officers be continued in office until the first day of July, 1909, for the reason that no such resolution was ever offered or adopted. They claim that their protest was unheeded, and that the defendant Stubenhaus acted so arbitrarily that at the close of the meeting seven members united in a request to call upon the vice-president, Louis Klein, to call a special meeting for February 3, 1909. There was an attendance of eight members at such meeting, at which the plaintiff was elected president, and others were elected to the various other offices of the congregation, as will hereafter more fully appear. According to

the receipt book of the financial secretary in office on January 16, 1909, ten members attended the meeting of that date. Of these, five attended the special meeting at which Goller claims to have been elected president. There is sufficient evidence in the case to warrant a finding that the only members who attended the meeting of January 16 were those who paid their dues on that day. The probabilities are, therefore, that had a resolution been offered to continue the defendant Stubenhaus in office it would have been opposed. As seen, he was opposed at the preceding election, and, as shown by subsequent events, those who were opposed to him had not become reconciled when the time for the election of new officers arrived. In view of all this, I do not think that a resolution of the character claimed was further introduced or passed at the said meeting of January sixteenth. Having thus shown that the defendent Stubenhaus was not re-elected at the time he claims he was, the claim of the plaintiff to the presidency of the congregation will now be considered. It is urged on behalf of the plaintiff that " the by-laws of the congregation provided that in the event the president refuses to act, or acts illegally, the vice-president takes the president's chair and acts in his stead. The same by-law further provides for the calling of a special meeting to complete or finish the business remaining unfinished by the president." Counsel for the plaintiff further contends that " three meetings were called in January, 1909, for nomination and election of officers. The defendant refused to proceed with the election, indeed with an orderly transaction of business, driving the members from the place. The proper and legal remedy was to call a special meeting and complete the unfinished work — have third nominations and election — and that was done." The defendant's witnesses denied that such a by-law or rule was ever adopted. After examining the minutes of the meeting, I am unable to find therein any mention or entry of the adoption of any resolution or motion of the character claimed, and I reach the conclusion that none was ever adopted or passed. Even if such a resolution was passed, the proof fails to show that a demand was ever made of the defendant

Stubenhaus to call a special meeting and that he refused to do so. Moreover, it appears from the minutes of the special meeting that it was not called, as claimed, to complete or finish unfinished business, but for an object stated as follows: " Neglect of duty on the part of the president towards the society." Assuming, however, without deciding the point in favor of the plaintiff, that under the peculiar circumstances of the case a majority of the members had, in the absence of any rule upon the subject, the inherent right to have a special meeting called, it is nevertheless essential to the validity thereof that all the members be notified of the time and place thereof and the particular purpose for which it was called. Rudolph v. Southern Beneficial League, 7 N. Y. Supp. 135, 139; 4 Cyc. 308. While there is some evidence that Freedman, the secretary, was directed by the vice-president, one Louis Klein, to notify the members of such special meeting, there is no evidence that such notice was given to all the members. On the contrary some of the members favorable to the defendant Stubenhaus testified that they did not receive any notice whatever to attend the meeting. As already stated Freedman, who is claimed to have notified the members, was in Europe when the case was tried. His deposition was not taken, nor was there any testimony adduced that such notices were prepared and mailed or delivered to all the members. The plaintiff contends that if the congregation had no by-laws, the defendant Stubenhaus could be removed by a majority of the members and another elected in his stead, and therefore that the action of the members at the special meeting of February third in electing a new board of officers was legal. The case of Ostrom v. Greene, 161 N. Y. 353, is cited in support of the position contended for; but upon examination it will be found that there the association had no articles of association, constitution, by-laws nor rules of procedure, nor had it made any provision for stated meetings or for calling special meetings or for the terms of its officers. In the present case, the situation is entirely different. Although no constitution nor by-laws were ever adopted the congregation, as already stated, is governed by resolutions which have been adopted from time to time. It has also

stated or regular meetings held on the second and fourth Saturdays of each month and its officers are elected at the regular meetings held on the second Saturdays of January and July for the term of six months. The rule applicable to the removal or suspension of officers of unincorporated or voluntary associations is thus stated in the Cyclopedia of Law and Procedure (4 Cyc. 310) : " In the absence of a definite provision concerning the term of office, an officer holds his position merely at the pleasure of the association and may be removed without either cause or notice, though where such provision exists it is controlling." Since the tenure of office of the officers of the congregation was fixed, their removal or attempted removal, as gathered from the minutes of the special meeting, and as hereinafter shown, was wholly unauthorized. The minutes of the special meeting of February third, after reciting the objects of the same as above set forth, contain the following: " Whereas the president was called upon by the brothers to appear at a special meeting and he failed to come, a motion was made by Brother Reiss to have election of officers and an election took place. Brother Goller was unanimously elected president by all present brothers; Brother Reiss was unanimously, by all brothers, elected vice-president; Brother Gottfried was unanimously elected recording and financial secretary and Brother Schwartz was elected unanimously cashier; wherewith brother chairman closed the elections. Then Brother Eisenhandler made a motion that the chairman appoint a committee to visit the ex-president, and that the latter return the congregation's property to the newly elected officers. The committee consisted of Brothers Gottfried and Eisenhandler. Thereupon Brother President Goller closed the meeting in peace and harmony." It will be seen from the foregoing recitals that the defendant Stubenhaus is recognized as the president of the congregation, and that because he failed to appear a new election not only for president but for the entire board of officers was held. I do not think that the members who attended the special meeting had a right to take such action, and it cannot be justified even upon the theory that a majority is entitled to control. While it is

undoubtedly a rule applicable to unincorporated or voluntary associations that in the absence of a rule of usage to the contrary a majority of its members possess authority to control the actions thereof as to all matters within the scope of the objects for which it was formed, whether such objects are mentioned in the articles of association or are necessarily implied therefrom (4 Cyc. 310), I do not think such rule applies to the case at bar, at least so far as the attempted removal of the officers is concerned. Even if these views are erroneous, a majority of all the members in good standing, sixteen in number, did not participate in the proceedings of the special meeting. According to the evidence adduced in behalf of the plaintiff, eight members took part — not a majority. In the next place, no evidence was adduced showing that any specific charges were ever formulated or served upon any of the officers, or that timely notice was given to any of them that charges against them would be presented at such special meeting and acted upon. All that appears to have been done was to cite the defendant Stubenhaus to appear, and because he failed to do so not only was his position filled, but an election of all other officers was held, although it was not even pretended that any complaints, to say nothing of formal charges, had been made against the latter. While by the implication of ordering a new election the removal of the officers was intended the minutes fail to show that any direct action to that effect was taken. I do not think that upon a mere notification to the defendant Stubenhaus to appear at the special meeting, without disclosing the purpose for which his appearance was sought, his removal was warranted, even if such meeting had been regularly called and all the members had been notified to attend it, which, as seen, was not the case. My conclusion, therefore, is that neither of the claimants to the office of president was elected as claimed by them. In this view the defendant Stubenhaus and others holding office on January 16, 1909, when an election should have been held, continue in office until their successors are lawfully elected and qualified. 34 Cyc. 1132; Niblach Ben. Soc. (2d ed.), 189, 190. It should be noted that both factions passed resolutions purporting to continue in

office their respective officers until the determination of this action. The amended complaint is sufficiently broad in its allegations to state a right of action against the defendant Stubenhaus upon the theory that he is the *de facto* president of the congregation, even though the plaintiff failed to allege and prove that he was the president of the congregation when the action was commenced. In Rourke v. Elk Drug Co., 75 App. Div. 145, it was held that an action based upon a conspiracy committed by all the members of an incorporated association, acting through the associates, may, under the provisions of section 1919 of the Code of Civil Procedure, be maintained against the president or treasurer of the association. Applying the rule laid down in that case, any of the forms of relief sought may be had in this action, provided the proofs warrant the granting of the same. Taking up, then, the consideration of the evidence relating to the various controverted allegations of the complaint in the order in which they are stated, I find that the plaintiff is not, as claimed, the duly elected president of the congregation; that the defendant Stubenhaus and his associates continued in office in spite of the fact that no resolution to that effect was offered or adopted, and that the defendants did not conspire to acquire and appropriate to their own use the property of the congregation. The minutes of the meeting of January 30, 1909. state that " a resolution was passed by all the members that the cemetery plot and all other property which this society possessed should be sold." As the passage of such resolution is disputed by the plaintiff and his faction, the defendants should be restrained from selling and disposing of such property until the views of the members relating thereto can be ascertained at a meeting, regular or special, upon due notice to all the members, which notice should state the objects of the meeting. As to the removal of the religious articles above mentioned by the defendant Stubenhaus to his apartments, I am satisfied that they were removed in good faith, after conferring with members of his faction, with a view of saving the expense of storing them after the expiration of the lease of the hall in which the congregation worshipped. The defendant Stubenhaus sold a lot in the con-

gregation cemetery plot to a person other than a member. While justification for such a course may be found in the resolutions of January thirtieth, the further sale of burial lots, except to members, should be discontinued until the further order of the court. It results from the foregoing views that the plaintiff is entitled to judgment restraining the defendants from selling or disposing of any of the property of the congregation, including the cemetery plot. All *de facto* officers, as well as all others claiming office by virtue of the alleged election of February 3, 1909, having in their possession any moneys or minute books or books of account, or any property of the congregation, will also be restrained from paying out or disposing of the same until officers of the congregation are regularly elected and have qualified and can take possession of such property.

Ordered accordingly.