**Application of CREDIT INFORMATION CORPORATION OF NEW YORK to Quash a Grand Jury Subpoena for the Production of Credit Records.**

**No. M–11–188.**

United States District Court,
S. D. New York.

Oct. 4, 1978.

Nathaniel Rothstein, New York City, for movant; Onie & Fluke, Sidney Fluke, New York City, of counsel.

Robert B. Fiske, Jr., U.S. Atty., New York City, Denise L. Cote, Asst. U.S. Atty., New York City, of counsel.

ROBERT J. WARD, District Judge.

Credit Information Corporation of New York ("CIC") moves to quash a grand jury subpoena duces tecum served upon it. For the reasons hereinafter stated, the motion is granted.

The issue the Court has been asked to resolve on this motion is whether a grand jury subpoena is a court order within the meaning of § 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("the Act"). The Act, promulgated in 1970, was intended to protect consumers from unfair practices arising from the rapidly-growing credit reporting industry by providing them with the opportunity to correct inaccurate information in their credit files, preserving the confidentiality of such information and preventing undue invasions of their right to privacy. *See, e. g.,* 15 U.S.C. § 1681(a)(3), (4) & (b);[1] 116 *Cong.Rec.* 35941 (1970) (remarks of Sen. Proxmire); *Report of the Committee on Banking and Currency, Fair Credit Reporting,* Sen.Rep. No. 91–517, 91st Cong., 1st Sess. at 1–2 (1969).

In furtherance of these purposes, § 604 of the Act, 15 U.S.C. § 1681b, limits the access of third-parties to consumer reports as follows:

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

Failure to comply with this section may subject a consumer reporting agency to both civil and criminal penalties. *See* §§ 616, 620, 15 U.S.C. §§ 1681n, 1681r.

---

1. Section 602 of the Act, 15 U.S.C. § 1681 provides in pertinent part:

    (a) The Congress makes the following findings:

       *     *     *     *     *     *

    (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

    (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

    (b) It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

CIC is a consumer reporting agency subject to the provisions of the Act. On August 7, 1978, it was served with a grand jury subpoena duces tecum requiring it to appear before a federal grand jury in this district and to produce records, correspondence and documents relating to the extension of credit to two named consumers over the period January 1, 1972 to the present. CIC refused to produce the information sought by the grand jury and instead made the instant motion to quash the subpoena on the ground that compliance therewith would constitute a violation of the Act and subject it to the aforementioned penalties.

■ CIC argues that disclosure is proscribed by § 1681b because the subpoenaed materials are not sought for any of the legitimate, essentially credit-related, business purposes set forth in § 1681b(3), and the Government has failed to procure the consent of the consumers or an order of the court. The Government's position is simply that disclosure is permitted under § 1681b because a grand jury subpoena is itself a court order. Because of the recurring nature of the issue, the parties have urged the Court to decide the broad question posed by the Government's position rather than have the Court attempt to resolve the controversy by determining whether it would be appropriate for it now to order CIC to produce the subpoenaed material. While the Government points to two district court decisions holding that the subpoena is a court order within the meaning of § 1681b, CIC relies on an advisory letter from the Federal Trade Commission ("F.T.C."), the agency charged with administrative enforcement of the Act, which concludes to the contrary. This Court concurs with the conclusion of the F.T.C. and holds that a grand jury subpoena is not a court order within the meaning of § 1681b.

■ Although the grand jury subpoena has been described as the "court's process," [2] it is functionally a tool of the prosecutor, issued at the initiative of the United States Attorney, with no judicial participation. As Judge Gibbons of the Third Circuit has aptly stated:

[A]lthough federal grand juries are called into existence by order of the district court, Fed.R.Crim.P. 6(a); 18 U.S.C. § 3331, they are "basically . . . a law enforcement agency." *United States v. Cleary,* 265 F.2d 459, 461 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959). They are for all practical purposes an investigative and prosecutorial arm of the executive branch of government. *See* 8 J. Moore, Federal Practice ¶ 6.02[1], [6] (2d ed. Cipes ed. 1972). Second, although like all federal court subpoenas grand jury subpoenas are issued in the name of the district court over the signature of the clerk, they are issued pro forma and in blank to anyone requesting them. Fed.R.Crim.P. 17(a). The court exercises no prior control whatsoever upon their use. Third, although grand jury subpoenas are occasionally discussed as if they were the instrumentalities of the grand jury, they are in fact almost universally instrumentalities of the United States Attorney's office or of some other investigative or prosecutorial department of the executive branch. Grand jury subpoenas then, when they are brought before the federal courts for enforcement, for all practical purposes are exactly analogous to subpoenas issued by a federal administrative agency on the authority of a statute, without any prior judicial control.

*In re Grand Jury Proceedings,* 486 F.2d 85, 89–90 (3d Cir. 1973).

■ In view of the grand jury's essentially investigatory and prosecutorial function, the Court believes it would ignore reality to consider a grand jury subpoena an order of the court. The Court also believes that such a characterization would be inconsistent with the function Congress intended a court order to serve under the Act, *i. e.,* to ensure that a consumer's privacy is not unduly impinged upon by disclosure of his credit file to third-parties, including governmental investigative agencies, which

---

2. *United States v. Brown,* 359 U.S. 41, 49, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959).

are not seeking the information for credit-related, business purposes.[3] In order to provide this protection for the consumer, it is necessary for a court to consider the purposes for which disclosure is sought and to make a reasoned determination as to whether granting the requesting party access to the consumer's file for such purposes would violate the consumer's rights. Because a grand jury subpoena, like that of a governmental administrative agency, is issued without any judicial consideration, but rather *pro forma* by the clerk of the court at the request of and for the purposes of the prosecutor, it does not provide the protection for consumer privacy which Congress sought when it required a court order under § 1681b. *Cf. Fuentes v. Shevin,* 407 U.S. 67, 75, 93 & n. 30, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (denial of due process to replevy goods on writ issued summarily by court clerk on sole basis of conclusory complaint). Therefore, this Court holds that such a subpoena is not a court order within the meaning of that section.

The decisions relied on by the Government in what it terms "virtually identical litigation" in two other districts do not persuade this Court otherwise. The memorandum opinion of the Central District of California, *In re Miscellaneous Grand Jury Proceedings,* Misc. No. 6366 (C.D.Cal. Jan. 13, 1978), cites no reasons or authority for its decision. The order in *In the Matter of Subpoena Duces Tecum to Testify Before Grand Jury,* No. 77 Misc. 29 (E.D.Mo. Mar. 22, 1977) cites with no explanation or page reference four cases, *Brown v. United States,* 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959); *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *United States v. Stevens,* 510 F.2d 1101 (5th Cir. 1975); and *Nixon v. Sirica,* 159 U.S.App.D.C. 58, 487 F.2d 700 (1973) for its decision that "[a] subpoena duces tecum is a court order." The Court has read these decisions and found isolated phrases which, if taken out of context, could be considered supportive of the Government's position. However, in each of the cited cases, the witness had refused to obey an order of the court to comply with a grand jury subpoena. *See* 359 U.S. at 43, 50, 79 S.Ct. 539; 384 U.S. at 366–67, 86 S.Ct. 1531; 510 F.2d at 1102; 159 U.S.App.D.C. at 62–64, 487 F.2d at 704–06. Hence, these decisions recognized an inherent distinction between a grand jury subpoena and the court's order which is required to enforce it. The United States Supreme Court noted the distinction explicitly in *United States v. Brown, supra:*

> When the petitioner first refused to answer the grand jury's questions, he was guilty of no contempt. He was entitled to persist in his refusal until the court ordered him to answer.
>
> .    .    .    .    .
>
> When upon his return to the grand jury room the petitioner again refused to answer the grand jury's questions, now in direct disobedience of the court's order, he was for the first time guilty of contempt.

359 U.S. at 49–50, 79 S.Ct. at 546.

The Government also argues that requiring court orders for enforcement of grand

---

**3.** Congress expressly stated its intention that consumers be protected from unwarranted invasions of their privacy by governmental administrative agencies. *E. g.,* § 608 of the Act, 15 U.S.C. § 1681f (specifically limiting information which governmental agencies may obtain from consumer reporting agencies absent compliance with § 604); 116 *Cong.Rec.* 35941 (1970) (remarks of Sen. Proxmire) (Among the consumer rights secured by the Act are: "[t]o have the information in [a consumer's] file kept confidential and used only for legitimate business purposes," and "[t]o have personal information in [a consumer's] file kept from governmental agencies unless ordered by a court."); 114 *Cong.Rec.* 24902 (1968) (remarks of Sen. Proxmire) (The legislation would require "that credit bureaus have in effect procedures for guaranteeing the confidentiality of the information they collect and that no such information be released to noncreditors such as governmental investigative agencies without the express consent of the person involved."); *see F. T. C. v. Manager, Retail Credit Co.,* 357 F.Supp. 347, 351 & n. 4 (D.D.C.1973), *rev'd on other grounds,* 169 U.S.App.D.C. 271, 515 F.2d 988 (1975) ("[S]ection 604 was undoubtedly directed, in part at least, at preventing investigations by governmental agencies which might seek to use the information obtained from consumer reports to prosecute the consumers.").

jury subpoenas served upon credit agencies would impede the expeditious administration of the criminal laws by lengthening the time required for investigations and jeopardizing their secrecy. Based upon this Court's experience with analogous matters, however, it is unconvinced that such applications cannot be processed promptly and confidentially.

Accordingly, the motion is granted and the subpoena is quashed.

It is so ordered.