**In re GRAND JURY SUBPOENA.**

**Misc. No. 87–77.**

United States District Court,
D. Vermont.

Nov. 17, 1987.

---

Sandra A. Strempel, Asst. U.S. Atty., Burlington, Vt., for petitioner.

Jacqueline A. Hughes, Asst. Atty. Gen., Dept. of Taxes, Montpelier, Vt., for respondent.

## MEMORANDUM OF DECISION

JEROME J. NIEDERMEIER, United States Magistrate.

This matter has been referred to us pursuant to 28 U.S.C. § 636(b)(1)(A) to hear and determine the motion of Norris Hoyt, Commissioner of the State of Vermont, Department of Taxes ("Commissioner") to quash a subpoena to testify before the grand jury issued on application of the United States Attorney for the District of Vermont. The subpoena directs the Commissioner to appear personally before the grand jury which is investigating a nontax matter and to bring with him certain sales tax records kept by the Vermont Department of Taxes. The Commissioner asserts two grounds in support of his motion to quash: statutory privilege and lack of specificity. The United States ("Government") opposes the motion, claiming that the subpoenaed records are not privileged and that the subpoena is sufficiently specific. The court heard oral argument on the motion on October 13, 1987.

### a. *Privilege*

■ A grand jury has broad investigative powers and its authority to subpoena witnesses and documents is both well-established and zealously protected. *See e.g. Branzburg v. Hayes*, 408 U.S. 665, 668, 92 S.Ct. 2646, 2650, 33 L.Ed.2d 626 (1972); *United States v. Dionisio*, 410 U.S. 1, 17–18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973); *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 248–249 (2d Cir.1985), *cert. denied, sub nom. Roe v. United States*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986).[1] However its powers

---

1. The grand jury's subpoena power derives from Rule 17 of the Federal Rules of Criminal Proce- dure which reads in relevant part:

are not unlimited. Grand juries are subject to judicial supervision and a subpoena may be quashed or modified if compliance would be unreasonable or oppressive. Fed.R. Crim.P. 17(c) (*supra* n. 1); *Branzburg v. Hayes,* 408 U.S. at 708, 92 S.Ct. at 2670. An individual ordered to appear and testify or to produce documents or other evidence may properly refuse to do so if the information sought is protected by Constitution-

> Rule 17. Subpoena
> (a) For attendance of witnesses; form; issuance. A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a United States magistrate in a proceeding before him, but it need not be under the seal of the court.
>
> \* \* \* \* \* \*
>
> (c) For production of documentary evidence and of objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.
>
> \* \* \* \* \* \*
>
> (g) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued or of the court for the district in which it issued if it was issued by a United States magistrate.

2. The grand jury subpoena is not a talisman that dissolves all constitutional protections. The grand jury cannot require a witness to testify against himself. It cannot require the production by a person of private books and records that would incriminate him. *See Boyd v. United States,* 116 U.S. 616, 633–635 [6 S.Ct. 524, 533–535, 29 L.Ed. 746] (footnote omitted). The Fourth Amendment provides protection against a grand jury subpoena *duces tecum* too sweeping in its terms 'to be regarded as reasonable.' *Hale v. Henkel,* 201 U.S. 43, 76 [26 S.Ct. 370, 379, 50 L.Ed. 652]; cf. *Oklahoma Press Publishing Co. v.*

al, common law, or statutory privilege. *Id.* at 688, 92 S.Ct. at 2660.[2]

In this case the Commissioner asserts what amounts to a prohibition under state law against disclosure of tax records sought by the grand jury. The recognition of his asserted state law privilege in proceedings before a federal grand jury is governed by the federal common law. Fed. R.Evid. 501.[3]

> *Walling,* 327 U.S. 186, 208, 217 [66 S.Ct. 494, 505, 509, 90 L.Ed. 614]. And last term, in the context of a First Amendment claim, we indicated that the Constitution could not tolerate the transformation of the grand jury into an instrument of oppression: 'official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification. Grand juries are subject to judicial control and motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth.' *Branzburg v. Hayes,* 408 U.S., at 707–708 [92 S.Ct. at 2670]. *See also, id.,* at 710 [92 S.Ct. at 2671] (Powell, J., concurring).
> *United States v. Dionisio,* 410 U.S. at 11–12, 93 S.Ct. at 770.

3. Fed.R.Evid. 501 provides:

> Rule 501. General Rule
> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.
> This rule applies to grand jury proceedings pursuant to Fed.R.Evid. 1101 which states in relevant part:
> Applicability of Rules
> (c) Rule of privilege. The rule with respect to privileges applies at all stages of all actions, cases, and proceedings.
> (d) Rules inapplicable. The rules (other than with respect to privileges) do not apply in the following situations:
> (1) Preliminary questions of fact. The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104.

The case law on this rather narrow question of privilege is not extensive. Courts addressing the issue have sought to balance the federal interest in investigating and prosecuting criminal activity through the grand jury process with legitimate state interests in keeping certain records, such as those at issue here, confidential. The court in *In re New York State Sales Tax Records*, 382 F.Supp. 1205 (W.D.N.Y. 1974), for instance, held simply that given the supremacy clause of the Constitution (Article 6, Clause 2), "[t]he powers of the federal grand jury ... must prevail over the nondisclosure provision of [state law]", which in that case made it unlawful for the state tax commissioner to disclose sales tax returns without a "proper judicial order." *Id.* at 1206. Other courts have shown more deference to state statutory privileges or prohibitions against disclosure and have looked to state law to determine the nature and extent of a privilege. In *In re Grand Jury Empanelled Jan. 21, 1981*, 535 F.Supp. 537 (D.N.J.1982) the court, in recognizing a qualified privilege under New Jersey law, observed that "principles of comity suggest generally that the federal courts should recognize state privileges 'where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Id.* at 541 (citing *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976)).

■ In *In re Hampers*, 651 F.2d 19 (1st Cir.1981), the First Circuit addressed the issue presented here: under what circumstances should a claimed privilege under state law prohibiting disclosure of state sales tax records be recognized in federal grand jury proceedings. The court adopted an analytical process for "weighing the importance of the disclosure sought in the federal prosecution against the potential injury caused a state by disclosure." *Id.* at 22.[4] The first inquiry is whether the state courts would recognize the asserted privilege, the second "whether the state's asserted privilege is 'intrinsically meritorious in our independent judgment.'" *Id.* (citing *American Civil Liberties Union of Miss. v. Finch*, 638 F.2d 1336, 1343 (5th Cir. 1981)). If the court determines that a privilege does exist under state law, it then decides whether, "in light of reason and experience," Fed.R.Evid. 501, the privilege should yield under federal evidentiary common law to the grand jury subpoena power. *In re Hampers*, 651 F.2d at 23; *accord, In re Cruz*, 561 F.Supp. 1042 (D.Conn.1983). We find the First Circuit's approach well-reasoned and will apply its process to the case before us. We consider first the existence of a privilege under state law.

■ The Commissioner relies on Vt.Stat. Ann. tit. 32, § 3102 (1981) and regulations promulgated thereunder for his asserted privilege. § 3102 provides:

> A record or file of the tax department shall not be open for public inspection. A certified copy of such record or file shall not be issued except in the discretion of the commissioner or upon the order of a justice of the Supreme Court, a superior court, the judge of a district court, or a judge of probate.

The applicable regulations of the Vermont Department of Taxes state:

> Reg. § 1.3102–3 *Disclosure Prohibited*
> Returns and return information shall be confidential, and no present or former officer, employee or agent of the Department of Taxes shall disclose to any person not an officer, employee or agent of the Department of Taxes any return or return information.

> Reg. § 1.3012–4 *Disclosure Permitted*
> The Commissioner may, in his or her discretion and subject to such conditions and requirements as the Commissioner may provide, including any confidentiality requirements of the Internal Revenue Service upon written request, disclose returns or return information:

> \*    \*    \*    \*    \*    \*

(2) Grand jury. Proceedings before grand juries.

---

4. The analysis adopted by the *Hampers* court is taken from *American Civil Liberties Union of Mississippi v. Finch*, 638 F.2d 1336 (5th Cir. 1981).

E. In compliance with a proper court order requiring disclosure.

Violation of the regulations may subject a person to discipline, including dismissal from state employment.[5] Reg. § 1.3102-8.

The Commissioner argues that § 3102 and Reg. § 1.3102 establish a privilege and prohibit his disclosure of sales tax records to a grand jury except by court order. The Commissioner stated at oral argument that he would readily comply with the subpoena upon issuance of an order signed by the magistrate. The Government contends that § 3102 prohibits disclosure to "the public," that a grand jury, by virtue of the secrecy of its proceedings, is not a public entity, and that disclosure to the grand jury is therefore not prohibited. The Government would have us construe the privilege narrowly, and argues that since the state statute authorizes disclosure by court order and under other limited circumstances, contrasting this with the non-disclosure provisions in *Hampers,* and *Cruz, supra,* the privilege should not be recognized.

We acknowledge the preference in the courts for narrow construction of privileges. *See e.g. Kinoy v. Mitchell,* 67 F.R.D. 1 (S.D.N.Y.1975). However, we are also cognizant of the deference generally accorded administrative agencies in the interpretation of their governing statutes. "Unless contrary to the indications of the statute itself, the construction and application of a statute by the agency charged with its administration is entitled to substantial deference." *Grocery Manufacturers of America, Inc. v. Gerace,* 755 F.2d 993, 1001 (2d Cir.1985). *See also State of New York v. Lyng,* 829 F.2d 346 (2d Cir. 1987).

The Commissioner, both in his regulations and in his consideration of the grand jury's subpoena in this case has read § 3102 to establish a privilege which prevents his disclosure of sales tax records under the circumstances here. The only relevant Vermont case law we have found supports his position. In *Doe v. Salmon,* 135 Vt. 443, 378 A.2d 512 (1977) the Vermont Supreme Court observed that while there is a general right to inspect public records, that right is subject to certain statutory exceptions, including the provisions of § 3102. *Id.* at 446, 378 A.2d 512. Even if we were to agree that a grand jury is not technically "the public," we note that Reg. § 1.3102 provides for disclosure to other non-public entities such as officers or employees of other states, the federal government, and Vermont law enforcement authorities, but only if the information disclosed is subject to the same confidentiality protections as otherwise provided for in the regulation. Reg. § 1.3102 C, D. The fact that a grand jury may be a non-public entity does not therefore resolve the question of whether a Vermont court would abrogate the privilege without condition. We are not willing to say, in the face of the Commissioner's reading of the statute and regulations as prohibiting disclosure of sales tax records to a grand jury, that no privilege should be recognized in the federal courts. We conclude therefore that a qualified privilege does exist under Vermont law, and that the Vermont courts would recognize it under these circumstances. We also find the privilege "intrinsically meritorious" in that it furthers a legitimate state interest in encouraging voluntary compliance with the reporting requirements of its tax laws.

5. The confidentiality provision of the Vermont Income Tax laws is also relevant here. It provides:

§ 5815. Secrecy of records
(a) Except in accordance with a judicial order, or as otherwise provided by law, the commissioner, his deputy, agent, designated officer or employee, and any person who at any time served or acted as commissioner, his deputy, agent, designated officer or employee, shall not divulge or make known in any manner the amount of income or any other particulars with respect to a taxpayer's income set forth or disclosed in any report, information or return required or obtained under this chapter, and chapter 153 of this title, including but not limited to any report, form, information or return provided for in section 5965 of this title.
Vt.Stat.Ann. tit. 32, § 5815 (1979). Violations of this section are punishable by a fine or imprisonment or both. *Id.* § 5815(b).

We next address the Government's argument that the grand jury subpoena is in itself the requisite "court order" under § 3102 and Reg. § 1.3102–4E. We disagree.

The grand jury has been characterized variously as "an appendage of the court," *Brown v. United States*, 359 U.S. 41, 49, 79 S.Ct. 539, 546, 3 L.Ed.2d 609 (1959), *reh'g denied*, 359 U.S. 976, 79 S.Ct. 873, 3 L.Ed.2d 843 (1959), *overruled on other grounds, Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), as "functionally a tool of the prosecutor," *Application of Credit Information Corp. of New York*, 457 F.Supp. 969 (S.D.N.Y.1978), as "for all practical purposes an investigative and prosecutorial arm of the executive branch of government," *In re Grand Jury Proceedings*, 486 F.2d 85, 90 (3d Cir.1973) and as "basically a law enforcement agency," *United States v. Cleary*, 265 F.2d 459, 461 (2d Cir.1959), *cert. denied*, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959). However characterized, it is apparent that the grand jury is without independent power to compel a witness to testify or to compel the production of evidence:

> A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid, because powerless itself to compel the testimony of witnesses. It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so.

*Brown v. United States*, 359 U.S. at 49, 79 S.Ct. at 546. Grand jury subpoenas are thus not self-executing orders. In *Brown*, the petitioner had been subpoenaed to appear and testify before a grand jury. He appeared, but in spite of complete immunity from prosecution and a specific order from the court to answer the grand jury's questions, refused to testify, asserting his Fifth Amendment privilege against self-incrimination. At issue was whether the court had followed the correct procedures under Rule 42(b) of the Federal Rules of Criminal Procedure in finding the petitioner in contempt. Although Brown has since been overruled, *Harris v. United States, supra*, the court's view of the relationship between a grand jury subpoena and the supervisory role of the court is still valid:

> When the petitioner first refused to answer the grand jury's questions, he was guilty of no contempt. He was entitled to persist in his refusal until the court ordered him to answer. Unless, therefore, it was to be frustrated in its investigative purpose, the grand jury had to do exactly what it did—turn to the court for help. If the court had ruled that the privilege against self-incrimination had been properly invoked, that would have been the end of the matter. Even after an adverse ruling upon his claim of privilege, the petitioner was guilty of no contempt. It was incumbent upon the court unequivocally to order the petitioner to answer. (citation omitted). The court did so. When upon his return to the grand jury room the petitioner again refused to answer the grand jury's questions, now in direct disobedience of the court's order, he was for the first time guilty of contempt.

*Id.* at 49–50, 79 S.Ct. at 546. Applying this view of the nature of the grand jury subpoena to the present case, the Commissioner was not subject to contempt simply for declining to comply with the grand jury subpoena. If the subpoena were itself a court order, the result would be different.[6]

---

**6.** In considering the force of a grand jury subpoena, other courts have found significant the fact that it is issued in blank and pro forma to anyone requesting it, Fed.R.Crim.P. 17(a), and that the court in whose name it is issued exercises no prior control over its use. *See e.g. In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973); *Application of Credit Information Corp. of New York*, 457 F.Supp. 969 (S.D.N.Y.1978).

The language of Federal Rule of Criminal Procedure 17(g) similarly implies the need for judicial review and a court order before a witness can be found in contempt for failure to obey a grand jury subpoena: "Failure by any person without adequate excuse to obey a subpoena served upon him *may* be deemed a contempt of the court from which the subpoena issued or of the court for the district in which it issued if it

**564**

We therefore conclude that a grand jury subpoena is not a court order under § 3102 and is insufficient to satisfy the requirement of § 3102 and the regulations.

■ We next determine under Fed.R. Evid. 501 whether "in light of reason and experience" the Commissioner's qualified privilege should yield under federal evidentiary common law to the grand jury subpoena power. In so doing we are mindful of this circuit's reluctance to interfere with grand jury proceedings and its aversion to preliminary showings of need and unavailability of other sources before enforcing a grand jury subpoena. *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d at 249; *In re Liberatore*, 574 F.2d 78 (2d Cir.1978); *see also Grand Jury Subpoena Duces Tecum to John Doe Corp.*, 570 F.Supp. 1476 (S.D.N.Y.1983). Nevertheless, we believe the law which has evolved in the federal courts requires a preliminary showing where a grand jury seeks disclosure of state tax records protected by some form of non-disclosure provisions creating a statutory privilege.[7]

■ In *In re Hampers, supra,* the First Circuit considered the conditions under which documents relating to the state sales tax on meals and beverages, protected against disclosure by Massachusetts law, should be required to be disclosed to a federal grand jury. 651 F.2d at 20. The court decided that the same conditions under which federal tax information may be made available to federal officials for nontax criminal investigations, 26 U.S.C. § 6103(i)(1), should govern the availability of state tax information to a grand jury for similar purposes. *Id.* at 23. It therefore held that where a witness enjoys a qualified privilege under Fed.R.Evid. 501 because of a state's nondisclosure statute,

in order to enforce a subpoena in federal criminal investigation, a federal grand jury must proffer reasonable cause to believe that a federal crime has been committed, that the information sought will be probative of a matter at issue in the prosecution of that crime, and that the same information or equally probative information cannot be obtained elsewhere through reasonable efforts.

*Id.*[8]

The court in *In re Grand Jury Empanelled Jan. 21, 1981*, 535 F.Supp. at 541–542,

---

was issued by a United States Magistrate." (emphasis added).

7. We note that none of the Second Circuit cases cited which declined to require a preliminary showing of relevance or need before issuance of a grand jury subpoena involved a question of statutory privilege. The court in *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d at 249, implicitly acknowledged that where a valid constitutional claim or statutory privilege is asserted, such a showing may be justified.

Where, as here, neither an attorney-witness nor a client-intervenor raises a valid constitutional claim or statutory privilege, "there is no more reason to require a preliminary showing ... than there would be in the case of any witness who, despite the lack of any constitutional or statutory privilege, declined to answer a question or comply with a grand jury request."

*Id.* (quoting *United States v. Dionisio*, 410 U.S. at 17 n. 16, 93 S.Ct. at 773 n. 16.) *See* also *Branzburg v. Hayes*, 408 U.S. at 688, 92 S.Ct. at 2660. "Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that 'the public ... has a right to every man's evidence, except for those persons protected by a constitutional, common-law or statutory privilege' (citations

omitted), is particularly applicable to grand jury proceedings." (footnote omitted).

8. 26 U.S.C. § 6103(i)(1) reads:
(i) Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration.
(1) Nontax criminal investigation.
(A) Information from taxpayer. A return or taxpayer return information shall, pursuant to, and upon the grant of, an ex parte order by a Federal district court judge as provided by this paragraph, be open, but only to the extent necessary as provided in such order, to officers and employees of a Federal agency personally and directly engaged in and solely for their use in, preparation for any administrative or judicial proceeding (or investigation which may result in such a proceeding) pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party.
(B) Application for order. The head of any Federal agency described in subparagraph (A), or, in the case of the Department of Justice, the Attorney General, the Deputy Attorney General, or an Assistant Attorney General, may authorize an application to a Feder-

likewise found the provisions of § 6103(i) to provide the appropriate accommodation of a state's interest in protecting the confidentiality of tax records and the competing federal interest in enforcement of its criminal laws. *See also In re Cruz*, 561 F.Supp. at 1045–1046 (citing with approval *In re Hampers* and extending, under Rule 501, the qualified privilege under § 6103 to confidential state tax information).

We find the federal common law charted by the above-cited cases to be well-reasoned and to strike a sensible balance between the grand jury's need for unfettered access to evidence in its investigation of federal crimes and state statutory privileges protecting the confidentiality of tax records. We, like the *Hampers* court,

> see no reason why, if federal prosecutions are not unduly hindered by the restraints of § 6103, they would be so hindered by applying the same rules to state tax returns. We see a positive virtue in avoiding any circumvention of

§ 6103 or inconsistency in rules of access to federal and state tax information. And we see value in preserving in this small area the postures of comity and deference arising from federalism.

*In re Hampers,* 651 F.2d at 23.[9]

▆ We therefore order that the Commissioner's motion to quash be granted unless within 10 days the Government submits, through the grand jury, an affidavit sufficient under § 6103(i)(1)(B) to overcome the Commissioner's qualified privilege.[10]

### b. *Specificity*

The Commissioner is concerned that the grand jury subpoena, as worded, may encompass references in subpoenaed documents to individuals whose records were used to verify information provided by the individual taxpayer who is the subject of the grand jury investigation, that is, persons contacted as part of the Commission-

---

al district court judge for the order referred to in subparagraph (A). Upon such application, such judge may grant such order if he determines on the basis of the facts submitted by the applicant that—

(i) there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed; (ii) there is reason to believe that such return or return information is probative evidence of a matter in issue related to the commission of such criminal act; and (iii) the information sought to be disclosed cannot reasonably be obtained from any other source, unless it is determined that, notwithstanding the reasonable availability of the information from another source, the return or return information sought constitutes the most probative evidence of a matter in issue relating to the commission of such criminal act.

However, the Secretary shall not disclose any return or return information under this paragraph if he determines and certifies to the court that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

9. The Government argues that the provisions of § 6103(i) apply only to income tax returns and records and should not be applied to state sales tax records which, it contends, are entitled to a lesser expectation of privacy. In support of its contention, the Government points to the lack of any specific provision under the Vermont sales tax statutes, Vt.Stat.Ann. tit. 32, § 9701 *et*

*seq.,* requiring confidentiality. It likens sales tax records to federal returns relating to taxes on alcohol, tobacco, and firearms which do not require a court order prior to disclosure under § 6103. We decline to speculate on the import of the omission of a nondisclosure provision in the Vermont sales tax statutes. The general statute on inspection of tax department records and files, § 3102, and the regulations promulgated thereunder, make no exception for sales tax records. For this court to imply such an exception, as urged by the Government, would be an unwarranted intrusion on the domain of the state legislature. We also find no support for the Government's contention that state tax records should not be entitled to the same protections under § 6103 as income tax records. *See e.g. In re Hampers, supra.*

10. We have considered the Commissioner's amendment to his Motion to Quash in which he asks the court to consider, in weighing the government's interest in disclosure of the requested documents and records, the likelihood that the secrecy of the grand jury proceedings in this case will be compromised under Fed.R. Crim.P. 6(3)(C). (We presume he is referring to the provisions of Rule 6(e)(3)(C)). We believe the appropriate time to consider this concern is when and if disclosure is sought under Rule 6. We are aware of the petition by the Vermont Federal Bank seeking disclosure of certain documents subpoenaed by the grand jury from an accountant. We are informed by the Government that the bank is not seeking state tax records.

er's audit of those returns. The Commissioner informs the court in his memorandum that without an order to the contrary, he will expunge the names and other identifying information of those individuals if he is ordered to disclose the information sought in the present subpoena. We fail to find any basis and the Commissioner provides us none, to permit the Commissioner to delete information in records once they are properly subpoenaed by the grand jury. If the grand jury issues a subsequent subpoena supported by the necessary affidavit under § 6103, we believe that the subpoena in the language presently used would not fail for lack of specificity.

## CONCLUSION

Accordingly, we grant the Commissioner's motion to quash the grand jury subpoena unless the Government files the appropriate affidavit within 10 days. No costs.