UNITED STATES of America, Plaintiff,

v.

Francis E. KING, Defendant.

No. 76–CR–482.

United States District Court,
E. D. New York.

Dec. 29, 1976.

David G. Trager, U. S. Atty. for the E. D. N. Y., Brooklyn, N. Y., W. Bernard Rickland, Corp. Counsel, New York City, for plaintiff; Thomas P. Puccio, Brooklyn, N. Y., Samuel J. Warms, Asst. City Atty., Charles Himmelman, New York City, of counsel.

Frederick H. Cohn, New York City, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

While he was a detective in an elite anti-narcotics squad of New York City, defendant King allegedly obtained large sums by extortion from high-level narcotics dealers and by selling drugs he had seized. In preparation for trial on charges of failure to declare these proceeds as income, 26 U.S.C. §§ 7201, 7203 and 7206(1), the United States Attorney issued a subpoena duces tecum directing the Department of Finance of the City of New York to furnish defendant's relevant "original New York City Income Tax Returns . . . reflecting filing records and payments." The City seeks to quash on the ground of privilege. For the reasons indicated below the City's motion must be denied.

Had this case arisen under the Federal Rules of Evidence for United States Courts and Magistrates as promulgated by the Supreme Court, Rule 502 would have been controlling, for it would have recognized as privileged some documents created under a promise of privilege made by local law. It provided in pertinent part:

### REQUIRED REPORTS PRIVILEGED BY STATUTE

. . . . .

A public officer or agency to whom a return or report is required by law to be made has a privilege to refuse to disclose the return or report if the law requiring it to be made so provides.

56 F.R.D. 183, 235 (1972).

The information sought by the United States in this case might have fallen within the ambit of that Rule since the City Personal Income Tax Law prohibits divulgence. It states:

It shall be unlawful for the administrator or any other officer or employee of the department of finance of the city [or] any person engaged or retained by such administrator . . . to divulge or make known in any manner the amount of income or any particulars set forth or disclosed in any report or return required under this title.

New York City Administrative Code, Title T46–78.0. That provision has the force and effect of state law. L.1966, Ch. 773, New York General City Law Act 2–D, § 78.

Rule 502, along with other specific privilege rules, was rejected by Congress in favor of the more general Rule 501, leaving privileges to statutory and common law development, "in the light of reason and experience." As modified by Congress, Rule 501 provides:

### GENERAL RULE

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by

the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

In view of the apparent conflict between Rule 501, which appears to require that only federal privileges be recognized in federal criminal cases, and Rule 502, which would have required some state privileges to be followed in such cases, Rule 501 must prevail. But the current Rule does not rigidly circumscribe the form or extent of the rules of privilege applicable in federal criminal cases. Courts may continue to develop accepted privileges, as well as to formulate new privileges on a case by case basis.

Guidance in this continuing task is provided by consideration of the rationale and specific language of the detailed rules of privileges as promulgated by the Supreme Court. They still provide a useful standard from which analysis can proceed. Congress did not, by failing to adopt Rule 502 and other specific rules of privilege, disapprove of their content. Obviously, for example, its failure to adopt promulgated Rule 503, dealing with the attorney-client privilege, did not mean that this privilege should not be recognized in the federal courts. Nor did the striking of Rule 502 evince Congressional disapproval of appropriate deference to state law. *Cf.* Fed.R.Ev., Rules 302, 501 and 601.

■ A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy. *Cf. Apicella v. McNeil Laboratories, Inc.*, 66 F.R.D. 78 (E.D.N.Y.1975). In this connection we recognize that the benefit of a state's promise of protection from divulgence is greatly attenuated when those who must choose whether to communicate or not in reliance on the local privilege know that the federal authorities may force public revelation at will. The imperative need of the states and their subdivisions to efficiently administer their own fiscal operations militate strongly against action by a district court that might interfere with a state tax program, in the absence of a showing of genuine government need for subpoenaed material. *Cf. Tully v. Griffin Inc.*, 429 U.S. 68, 75, 97 S.Ct. 219, 223, 50 L.Ed.2d 227, 233 (1976) (recognition of state procedures for challenging state tax decisions as reason for federal courts to abstain from granting injunction).

■ But whether the dictates of "reason and experience" require judicial adoption of the substance of a state privilege cannot be determined solely by reference to the value of the implicated local interest. Rather, the justifiable "principles of the common law" as they relate to matters of developing new privileges—those not firmly embedded in federal law—require the balancing of four factors: first, the federal government's need for the information being sought in enforcing its substantive and procedural policies; second, the importance of the relationship or policy sought to be furthered by the state rule of privilege and the probability that the privilege will advance that relationship or policy; third, in the particular case, the special need for the information sought to be protected; and fourth, in the particular case, the adverse impact on the local policy that would result from non-recognition of the privilege. *Cf.* 8 Wigmore, Evidence § 2286 at 527 (McNaughton rev. 1961). We turn, then, to a consideration of these four factors as they relate to the case at bar.

### First, Federal Government's Need For Subpoenaed Material

Of the four factors to be weighed, the need for full revelation of pertinent evidence to the trier is the most powerful and least variable. The principle is embodied in the Federal Rules of Evidence through Rules 102, 401 and 403, the central provisions of that system, and elsewhere in the Rules. The primary Rules read as follows:

Rule 102.

Purpose and Construction

These rules shall be construed to secure fairness in administration, elimination of

unjustifiable expense and delay, and promotion of growth and development of the law of evidence *to the end that the truth may be ascertained* and proceedings justly determined.

### Rule 401.

### Definition of "Relevant Evidence"

'Relevant evidence' means *evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable . . . than it would be without* the evidence.

### Rule 402.

### Relevant Evidence Generally Admissible: Irrelevant Evidence Inadmissible

*All relevant evidence is admissible, except as otherwise provided* by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. . . .

(Emphasis supplied.)

Only recently the Supreme Court emphasized the strong policy in favor of full development of the facts in federal litigations to the end that justice be served. It observed in *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974):

We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. *The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.* The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. *The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts,* within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

(Emphasis supplied.) *Cf. Carr v. Monroe Manufacturing Co.,* 431 F.2d 384, 388 (5th Cir. 1970), *cert. denied sub nom. Aldridge v. Carr,* 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971) (privilege for records of Mississippi State Employment Service must yield to federal litigation involving claim of racial discrimination). The strong federal policies in favor of fair and full enforcement of federal criminal and tax laws emphasize the need for full disclosure of the facts in trials involving these laws. *See, e. g., Falsone v. United States,* 205 F.2d 734 (5th Cir. 1953), *cert. denied,* 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (state taxpayer-accountant privilege not recognized in tax investigation); *Colton v. United States,* 306 F.2d 633 (2d Cir. 1962) (federal, rather than state, law of attorney-client privilege applicable in federal tax investigation); *In re Albert Lindley Lee Memorial Hospital,* 209 F.2d 122 (2d Cir. 1953), *cert. denied sub nom. Cincotta v. United States,* 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (same as regards physician-patient privilege).

### *Second, Force Of Policy Behind State Privilege*

The secrecy statute involved in this case is but one of several thousand enactments and regulations in the United States which "make confidential in varying degree sundry matters required by law to be recorded or to be reported orally or in writing to various administrative officials." 8 Wigmore, Evidence § 2377 at 781 (McNaughton rev. 1951). These statutes, both state and federal, generally represent legislative policies of significant dimension. *See* Advisory Committee's Notes to Proposed Federal Rule of Evidence 502, 56 F.R.D. 183, 235 (1972). In effect, the government promises secrecy as an inducement for the creation of the communication to the state on the assumption that the communicator will be motivated to make a more honest and candid revelation. As Wigmore points out:

Where the government needs information for the conduct of its functions and the persons possessing the information need the encouragement of anonymity in order to be induced to make full disclosure, the

protection of a privilege will be accorded. . . . [M]any situations exist where . . . information can best be obtained only from the person himself whose affairs are desired to be known by the government. An attempt to get it by mere compulsion might be tedious and ineffective; and a concession of anonymity in this context would be meaningless. Thus where alternative methods of getting needed information are impracticable enough, it is expedient for government to promise to cloak the information in some special degree of secrecy in exchange for ready and truthful disclosure.

8 Wigmore, Evidence § 2377 at 780–81 (McNaughton rev. 1961). *Cf. In re Reid,* 155 F. 933, 935 (E.D.Mich.1906) (examination in bankruptcy; property statements required to be made and filed under Michigan law are not subject to disclosure; "To permit that information to become public would defeat the plain purpose of the statute by deterring the taxpayer from revealing what frequently could not be learned from any other source. . . . To sanction the violation of that [privilege] by denying the taxpayer the protection of the statute would invite refusals to obey the law, evasions, and perjury, often injuriously affect the interest of the taxpayer, would obstruct the collection of taxes, and diminish the revenues of the state."); *In re Valecia Condensed Milk Co.,* 240 F. 310 (7th Cir. 1917) (bankruptcy; state income tax returns protected); *Herman Bros. Pet Supply, Inc. v. N. L. R. B.,* 360 F.2d 176 (6th Cir. 1966) (unfair labor practice; information obtained under state unemployment compensation act protected).

The City argues that the important local need for revenue justifies a bar to disclosure because the rule will encourage cooperation by local taxpayers. It puts the argument in its brief as follows:

The State and Local secrecy provisions are intrinsically bound to the tax collecting powers, and thus are intended to facilitate revenue raising by encouraging candor and cooperation in the preparation of reports and returns on the part of the taxpayer. To the extent that the federal government attempts to nullify the secrecy provisions of the City's Tax Laws, it impairs the City's power to raise revenue. This argument is particularly cogent in this time of grave fiscal emergency.

Brief pp. 11–12.

The conclusion is not supported by the facts. An examination of New York's statutory secrecy provision scheme indicates that its chief goal is not, as the City alleges, the encouragement of candor and cooperation. Rather, as demonstrated by the provision itself, it is to induce other taxing authorities to furnish information upon a promise of the lifting of the privilege by the City. Title T46–77.0(e) reads as follows:

Cooperation with the United States and other states.—Notwithstanding the provisions of section T46–78.0, the [New York City] *administrator may permit* the secretary of the treasury of the United States or his delegates, or the proper tax officer of any other state imposing an income tax upon the incomes of individuals, or the authorized representative of either *such officer, to inspect any return* filed under this title, or may furnish to such officer or his authorized representative an abstract of any such return or supply him with information concerning an item contained in any such return, or disclosed by any investigation of tax liability under this title, but such permission shall be granted or such information furnished to such officer or his representative only *if the laws* of the United States or of such state, as the case may be, *grant substantially similar privileges to the administrator and such information is to be used for tax purposes only* . . ..

(Emphasis supplied.)

The United States is seeking the material for "tax purposes only" even though it is prosecuting a criminal rather than a civil tax case. Thus, disclosure of the documents subpoenaed here, and their use in this prosecution, would be permitted by the local law if the United States Code provided for reciprocity in the event that the City of

New York desired to make similar use of the taxpayer's Federal returns. Accordingly, the purpose of the restriction on disclosure sought here is not primarily to foster secrecy but rather to encourage reciprocity of disclosure.

Standing alone, that fact might not be sufficient to justify overriding the local privilege. While states and municipalities have a strong and legitimate interest in encouraging candor in tax reporting, they also have a cognizable interest in the effective policing of their statutory tax requirements. New York City appears to have chosen to further the latter interest somewhat at the expense of the former. It denies its taxpayers the encouragement of an ironclad prohibition on disclosure in order to gain information from other jurisdictions that may prove useful in overseeing the tax collection process.

That the City has chosen to pursue such a quid pro quo arrangement is an indication of the relatively weak policy behind the local privilege. Honest reporting by city taxpayers is induced chiefly by reliance on criminal statutes, cooperation with other taxing authorities and techniques for withholding taxes at the source as well as by other devices. We take judicial notice that such programs are immeasurably more effective than are privilege provisions as means to the ends sought by the City. *Cf. Spies v. United States*, 317 U.S. 492, 495, 63 S.Ct. 364, 366, 87 L.Ed. 418, 420 (1943). The privilege is relied upon only as a peripheral inducement to voluntary declaration of tax liability to the City.

### Third, Need For The Particular Information Sought In This Case

With reference to the facts of the instant case the United States has demonstrated a strong need for the City materials sought in spite of the fact that the United States Attorney has obtained copies of the defendant's New York State tax returns for the years in question. The indictment charges King with filing a false income tax return for the year 1970; failure to file tax returns as well as affirmative acts of conceal-ment for the years 1971 and 1973; and falsely subscribing an application for extension of time to file a 1973 tax return. In order to prove these charges the government will seek to establish that King intentionally filed a false federal return for 1970 and intentionally failed to file federal returns for the years 1971 and 1973, and that such intentional conduct was part of a scheme to evade income taxes. Since the requirement to file state and city tax returns is similar to the federal revenue provisions, a scheme to evade federal taxes by filing false returns or no returns would almost necessarily include consistent action concerning state and city returns. The New York City returns, or their lack, may thus furnish necessary evidence of intent, plan, knowledge or absence of mistake or accident with respect to the crimes charged.

In addition, there is a special issue which pertains to nonfiling and evasion for the year 1971 and the 1973 extension. The application for an extension contained the allegedly false statement that federal income tax returns had been filed "for each of the three years immediately preceding 1973." Other evidence will apparently show that King had informed the Internal Revenue Service that he had timely filed his 1971 income tax return and maintained that this return was lost by the Internal Revenue Service. In attempting to demonstrate that this statement to the Internal Revenue Service was false and part of an overall scheme to defraud, the government hopes to prove that the state and city returns, which were presumably mailed at approximately the same time, were not received by the respective state and city tax departments.

### Fourth, Adverse Impact on Local Policy In This Case

As a general proposition it may well be true that federal compulsion to produce city reports reduces the effectiveness of a municipal privilege. It is possible to conceive of a few taxpayers who might be encouraged to increased candor on a city tax return by the local nondisclosure provision. But in the real world, within the context of

New York's actual statutory tax scheme, no person is likely to be affected in the preparation of a city return by knowledge of its compellability in a federal tax prosecution such as the one before us.

An individual who is planning to evade federal tax liability will, despite the relatively low city tax rate, be highly likely to file similarly fraudulent city returns. But those returns may, under the New York City privilege statute, be revealed

> on behalf of the city in an action or proceeding under the provisions of this title or in any other action or proceeding involving the collection of a tax due under this title to which the city is a party or claimant . . .

New York City Admin.Code T46–78.0. Thus, it is not sensible to decide this case on the remote possibility that a taxpayer bent on fraud would file candid city, but not federal and state, returns showing illegal income, because of the city's limited promise of privilege.

In this connection we note that Rule 502, as promulgated by the Supreme Court, sensibly provided an exception for "false statements" that probably encompassed the use now sought. It read:

> No privilege exists under this rule in actions involving perjury, false statements, fraud in the return or report, or other failure to comply with the law in question.

56 F.R.D. 183, 235 (1972). This proviso reflects the general understanding that where false or fraudulent information has been reported (or returns fraudulently withheld), the rationale behind the privilege has been frustrated.

> To confer a privilege in such cases would defeat the more efficient administration of the agency that the legislature was attempting to create by enacting the protection provision.

Comment, Federal Rules of Evidence and the Law of Privileges, 15 Wayne L.Rev. 1287, 1304 (1969).

While technically the present litigation does not directly arise out of the filing of a false and fraudulent New York City tax return, the rationale reflected in the exception in Rule 502 is certainly applicable here, particularly if the City is correct in its contention on oral argument that Mr. King's New York City returns reflect the same information as does his Federal tax returns.

## CONCLUSION

■ The balance of relevant factors in this case clearly falls on the side of compelled disclosure. We cannot accept the contention that the important federal interests at stake are to be sacrificed in order to avoid, at most, an insignificant adverse impact on a state policy that is, at best, marginally served by the local statutory scheme of limited confidentiality. Accordingly, the motion to quash the subpoena is denied.

So ordered.