**In re GRAND JURY EMPANELLED JANUARY 21, 1981.**

Misc. No. 81–7.

United States District Court,
D. New Jersey.

March 23, 1982.

George E. Wilson, Sp. Atty., U. S. Dept. of Justice, Organized Crime & Racketeering Section, Camden, N. J., for petitioner.

Harley A. Williams, Deputy Atty. Gen., State of N. J., Trenton, N. J., for respondent.

## OPINION

GERRY, District Judge:

A federal grand jury, empanelled January 21, 1981 and sitting in Camden, New Jersey, is investigating alleged racketeering in local business and industry. The grand jury issued a subpoena duces tecum to the New Jersey Division of Taxation, (the "Division") requiring it to deliver "copies of all franchise tax returns filed by or for" a named company. The subpoena is supported by a *Schofield* affidavit of the Special United States Attorney, stating that "the records sought are relevant and necessary to the investigation and are not sought for any purpose other than to further the Grand Jury investigation." *In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973) (*Schofield I*); *In re Grand Jury Proceedings*, 507 F.2d 963 (3d Cir. 1975) (*Schofield II*).

The Division now moves to quash the federal grand jury subpoena in reliance on New Jersey's confidentiality statute respecting state tax records, N.J.S.A. 54:50–8.

The statute provides that the Division's records and files are "confidential and privileged" and may not be produced or disclosed by the Division except in connection with enforcement of the state tax laws. Criminal sanctions attach to unauthorized disclosures in violation of the Act.[1]

With this Act as a foundation, the Division urges three grounds upon which the subpoena might be quashed: (1) the state statute must be honored by the federal government under the Tenth Amendment; and (2) the statute grants a privilege for the records in question which should be recognized as a codification of common law under F.R.Evid. 501; (3) alternatively, the statutory protections afforded federal tax returns under 26 U.S.C. § 6103(i) should be applied to state tax records as well. The Division's arguments will be addressed in turn.

■ I. *Tenth Amendment.* The Division contends that since the state's power to tax is the quintessential aspect of its separate sovereign existence under our federal system, that taxation power must be afforded every protection against incursion by the federal government. It argues that the Tenth Amendment's recognition of the dual sovereignty principle mandates limitation of the federal subpoena power under these circumstances.

1. In pertinent part, the statute reads as follows:

   a. The records and files of the commissioner respecting the administration of this subtitle or of any State tax law shall be considered confidential and privileged and neither the commissioner nor any employee engaged in the administration thereof or charged with the custody of any such records or files ... shall divulge or disclose any information obtained from the said records or files or from any examinations or inspection of the premises or property of any person. *Neither the commissioner nor any employee* engaged in such administration or charged with the custody of any such records or files *shall be required to produce any of them* for the inspection of any person of *for use in any action or proceeding except* when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this subtitle or of the State tax law affected, or where the determination of the action or proceeding will affect the validity or amount of the claim of the State under some State tax law, or in any lawful *proceeding for the investigation and prosecution of any violation of the criminal provisions of this subtitle or of any State tax law.*

   b. The prohibitions of this section, against unauthorized disclosure by any present or former officer or employee of this State or any other individual having custody of such information obtained pursuant to the explicit authority of State law, shall specifically include, without limitation, violations involving the divulgence of any information from or any copy of a Federal return or Federal return information required by New Jersey law to be attached to or included in any New Jersey return. *Any person violating this section shall be guilty of a misdemeanor* and shall be punished by a fine not to exceed $1,000.00 or be imprisoned not to exceed 1 year, or both. N.J.S.A. 54:50–8 (emphasis added).

The Division identifies three prongs in the comprehensive system adopted by New Jersey to ensure voluntary tax reporting: namely, (1) various penalty provisions, (2) the Division's audit power, and (3) the confidentiality provisions of N.J.S.A. 54:50–8. Since penalties and audits operate only after a return is filed, the statutory guarantee of confidentiality is the sole means of encouraging the taxpayer to voluntarily furnish accurate and complete information in the first instance. A federal grand jury's use of the subpoena power is said to be particularly destructive of the state's objective where, as here, state tax records are sought for investigation of crimes unrelated to tax administration: while the confidentiality statute by its terms permits limited disclosure of return information in connection with state tax proceedings, it effectively guarantees state taxpayers that their filings cannot be used to expose them to non-tax criminal liability. Further, since F.R.Crim.P. (6)(e) does not provide for absolute secrecy of grand jury materials, the information leak necessarily created by compliance with the subpoena would not be effectively plugged by operation of that Rule. The Division therefore contends that enforced compliance with the subpoena would represent federal destruction of the state's own comprehensive implementation of its most central sovereign right, the right to tax its citizens.

This argument need not detain the Court long. A similar line of reasoning was presented to the Seventh Circuit respecting the denial of motions to quash federal grand jury subpoenas requiring production of certain records of a state attorney general. The Seventh Circuit rejected the argument that certain state functions are constitutionally immune from the federal subpoena power. Recognizing that the grand jury is entitled to every person's evidence absent the valid invocation of an established privilege, the court held that "[n]othing in the United States Constitution immunizes any 'exclusive domain of the state' . . . from the reach of a federal grand jury . . ." *In the Matter of the Special April 1977 Grand Jury (Scott)*, 581 F.2d 589, 592 (7th Cir.

1978), citing *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) and *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In particular, the Court found unpersuasive the state's reliance on the Tenth Amendment analysis in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976):

> "the impact of a [federal] subpoena on state functions is markedly different from the *Usery* direct system of regulation that requires a reallocation of state resources." *Scott, supra*, 581 F.2d at 592.

The Division's citation here of *Usery* and its progeny likewise fails to take account of the broad investigatory powers of the federal grand jury, even into matters of state government administration. Indeed, another district court has followed the Seventh Circuit's analysis to hold that the confidentiality provisions of a state tax law may not bar compliance with a federal grand jury subpoena without offending the Supremacy Clause. *In re Grand Jury Subpoena for New York State Income Tax Records*, 468 F.Supp. 575 (N.D.N.Y.1979)

I am satisfied that the Seventh Circuit's reasoning on this point is correct and fully applicable to the instant case. The Tenth Amendment does not of its own force require a federal grand jury to honor a state statute which would shield certain state records from production. However, rejection of this argument does not imply that the Division's concerns regarding the necessary confidentiality of its records may be minimized. Rather,

> "the requisite deference to a state's needs are sufficient to create a privilege for certain state records." *Scott, supra*, 581 F.2d at 592.

Accordingly, I turn now to a consideration of the Division's claims of privilege.

■ II. *Privilege.* It is well established that although the grand jury's subpoena authority is broad indeed, it may not compel the evidence of "those persons protected by a constitutional, common-law, or statutory privilege . . ." *Branzburg v.*

*Hayes, supra*, 408 U.S. at 688, 92 S.Ct. at 2660. In the federal courts, issues of privilege are resolved under F.R.Evid. 501, which applies both to civil and to criminal actions, including grand jury proceedings. *See In re Grand Jury Proceedings (Cianfrani and Kalman)*, 563 F.2d 577, 583 (3d Cir. 1977). That Rule provides in pertinent part:

> "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

The Division here contends that the material subject to the subpoena in question is entitled to the protection of a "required reports" privilege.

The Third Circuit has discussed in some detail the propriety of recognizing a state "required reports" privilege against federal grand jury subpoenas as a matter of federal common law under F.R.Evid. 501. *In the matter of Grand Jury Impaneled January 21, 1975 (Freedman and Cortese)*, 541 F.2d 373 (3d Cir. 1976). In that case a grand jury had subpoenaed attorney-client retainer agreements, required to be filed with the state court and assertedly protected from disclosure under a local court rule. The Court reviewed the history and purposes of the required reports privilege, noting that in general it has been a statutory creation and that such state privilege statutes had not therefore been adopted by the federal courts as a matter of federal common law. *Id.* at 380. Congress' rejection of a similar rule of privilege (Proposed F.R.Evid. 502) was noted; the Court read the legislative history of the proposed rule as "indicating

neither Congressional approval nor disapproval of a federal common law required reports privilege". *Id.* at 381. Upon balancing the public interest in law enforcement and effective grand jury proceedings against the state's interest in encouraging the voluntary filing of such retainer agreements, the Third Circuit held that no privilege would be afforded in that case: it observed that the group subject to the filing requirement was relatively small and that other effective means existed to ensure filing. *Id.* at 382–83. However, the Court was careful to note the factual differences between the situation then before it and circumstances which might be presented by other public filing requirements, particularly motor vehicle accident or public health reports. The Court added:

> "We also have not decided that a federal court will never recognize a state required reports privilege as a matter of federal common law in a federal grand jury investigation." *Id.* at 383.

Thus the issue now presented to this Court is whether (and to what extent) there exists a required reports privilege for state tax returns as against a federal grand jury investigation into non-tax criminal matters. The Division of course urges the adoption of such privilege in this context and suggests as its content either (1) the New Jersey confidentiality statute, which would provide an absolute privilege against disclosure in this non-tax criminal proceeding; or, alternatively, (2) the standards of 26 U.S.C. § 6103(i)(1). The federal statute permits disclosure of federal tax return information in federal non-tax only upon federal court order. The applicant must demonstrate (i) reasonable cause to believe a (non-tax) crime has been committed; (ii) reason to believe the return information is probative of a matter in issue; and (iii) the return information is not otherwise obtainable or is the most probative evidence.[2]

---

**2.** The subsection reads in full as follows:

(i) Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration.

　(1) Nontax criminal investigation

Information from taxpayer. A return or taxpayer return information shall, pursuant to, and upon the grant of, an ex parte order by a Federal district court judge as provided by this paragraph, be open, but only to the extent necessary as provided in such order, to

■ Adoption of the state or the federal statutory privilege—or any other such standard—is necessarily undertaken as a matter of federal common law under F.R.Evid. 501. That decision requires a balancing of competing interests: New Jersey's desire to protect and promote voluntary filing of accurate tax information, and the grand jury's duty to fully investigate alleged criminal activity. *Freedman and Cortese, supra,* 541 F.2d at 382. As the Third Circuit has observed, statutory qualified privileges limiting access to, and disclosure of, tax returns have a long history.[3] *Freedman and Cortese, supra,* 541 F.2d at 380. I have no doubt that one of the motivating factors underlying New Jersey's legislation in this field, as the Division argues here, is indeed a desire to encourage accurate and complete reporting by providing a measure of qualified confidentiality for the information submitted. This is a laudable legislative objective; the means chosen are reasonably calculated to achieve that goal. Moreover, the principles of comity suggest generally that the federal courts should recognize state privileges "where this can be accomplished at no substantial cost to federal substantive and procedural policy."

*United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976).

■ However, I am not persuaded that wholesale adoption of N.J.S.A. 54:50-8 as a matter of federal common law is appropriate. Such a step would completely remove the state tax returns from the reach of the federal grand jury investigating non-tax federal crimes. That result in turn would seriously impair the public interest in law enforcement and in ensuring effective grand jury proceedings. *See Freedman and Cortese, supra; United States v. King, supra.*

On the other hand, adoption of disclosure provisions similar to those of 26 U.S.C. § 6103(i) would permit release of the information sought once certain criteria are met; that is, a qualified privilege would be afforded the state tax returns. The provision for granting of an *ex parte* order only upon judicial determination of certain facts would require the federal government to actually demonstrate the grand jury's substantial need for the materials sought. *See United States v. King, supra.* Subsection (i) thus represents a Congressional balancing of the interests of full factual disclosure

officers and employees of a Federal agency personally and directly engaged in and solely for their use in, preparation for any administrative or judicial proceeding (or investigation which may result in such a proceeding) pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party.

(B) Application for Order. The head of any Federal agency described in subparagraph (A) or, in the case of the Department of Justice, the Attorney General, the Deputy Attorney General, or an Associate Attorney General, may authorize an application to a Federal district court judge for the order referred to in subparagraph (A). Upon such application, such judge may grant such order if he determines on the basis of the facts submitted by the applicant that—

(i) there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed; (ii) there is reason to believe that such return information is probative evidence of a matter in issue related to the commission of such criminal act; and .

(iii) the information sought to be disclosed cannot reasonably be obtained from any other source, unless it is determined that, notwithstanding the reasonable availability of the information from another source, the return or return information sought constitutes the most probative evidence of a matter in issue relating to the commission of such criminal act. '

However, the Secretary shall not disclose any return or return information under this paragraph if he determines and certifies to the court that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation. 26 U.S.C. § 6103(i)(1).

**3.** The government here concedes that § 6103(i) effectively grants a qualified privilege to federal tax returns as an Act of Congress under F.R.Evid. 501. *See* Weinstein's Evidence, United States Rules, ¶ 501[05]. Further, the government does not dispute the Division's contention that if a federal officer sought to obtain disclosure of federal tax returns for presentation to a federal grand jury investigating non-tax crimes, it would be necessary for them strictly to adhere to the provisions of the federal statute.

in criminal prosecutions against the legitimate objectives of confidentiality.

In my view, subsection (i) manifests a sound accommodation of competing interests. New Jersey's interest in preserving the confidentiality of tax returns submitted to it surely is as strong and as legitimate as the federal government's interest in protecting federal returns from routine, indiscriminate disclosure. Adoption of a parallel procedure for the use of state returns in the enforcement of "federal laws not relating to tax administration" should impose no excessive administrative burden upon federal law enforcement agencies. That procedure would also provide parallel protection against the disclosure of federal tax return information which may be incorporated in the state returns without the necessity of individual inquiry into the presence of such information in each particular case. I note that the government here insists that it has no desire to obtain federal return information via production of the state returns. Without imputing any disingenuous motive to the government, however, I observe that the form of tax return supplied by the Division does indeed call for the state taxpayer to provide information from federal returns or a copy of the federal return itself. Some measure of protection for state tax returns containing federal tax information is thus necessary to implement the policies underlying subsection (i)'s qualified privilege for federal returns.[4]

This result is consistent with the recent decision of the First Circuit in a virtually identical case. *In re Hampers*, 651 F.2d 19 (1st Cir. 1981). There, the Massachusetts Commissioner of Revenue had resisted compliance with the subpoena of a federal grand jury which required, *inter alia*, production of documents relating to the state sales tax for a taxpayer under investigation for federal non-tax crimes. Accepting the state's contention that its confidentiality statute precluded disclosure to the grand jury, the First Circuit recognized a qualified privilege under F.R.Evid. 501, "because of the state statute" but patterned after 26 U.S.C. § 6103(i)(1). *Id.*, 651 F.2d at 23–24. The government has cited two decisions fully enforcing federal subpoenas of state or local tax returns despite confidentiality statutes. However, neither case dealt with the question of privilege in the context of a federal non-tax prosecution. *New York State Income Tax Records, supra,* 468 F.Supp. at 576 (issue of privilege not raised); *United States v. King, supra,* 73 F.R.D. at 108 (federal tax prosecution; government demonstrated a strong need for the information sought). Neither opinion discussed the correlative standards of 26 U.S.C. § 6103(i).

For the reasons stated this Court will adopt, as a matter of federal common law under F.R.Evid. 501, a qualified privilege for the disclosure of state tax returns patterned precisely on 26 U.S.C. § 6103(i)(1) respecting proceedings to enforce federal laws not relating to tax administration. In Section 6103(i)(1)(B) the words "Attorney General, the Deputy Attorney General, or an Assistant Attorney General", shall be replaced by the words "any of its attorneys who are authorized to conduct proceedings within the District of New Jersey". Any reference to the "Secretary" in that section, in this context will be understood to refer to the head of the state's taxing authority: in New Jersey, the Director of the Division of Taxation in the Department of Treasury. The outstanding grand jury subpoena is in derogation of this qualified privilege; its summary *Schofield* affidavit in no way satisfies the detailed requirements of subsection (i). Accordingly, the subpoena will be quashed without prejudice to the government's right to bring a duly autho-

4. N.J.S.A. 54:50–8, subd. b. specifically includes any federal return information, required to be contained in a state return, within that Act's stringent prohibition against disclosure. That provision was designed to comply with 26 U.S.C. § 6103(p)(8), which conditions disclosure of federal return information to state tax officials upon the state's adoption of disclosure safeguards for such information. Subsection (p)(8) leaves the states free to devise their own form of disclosure protection. The federal provision thus is not an Act of Congress purporting to indirectly provide a particular form of privilege for state tax returns containing federal return information.

rized application for *ex parte* order subject to the procedures and criteria set forth in subsection (i)(1).