

Joseph Lieberman, Atty. Gen., Robert L. Klein, Paul Scimonelli, Asst. Attys. Gen., State of ·Conn., Hartford, Conn., for plaintiff.

Alan H. Nevas, U.S. Atty., Nancy Lukingbeal, Asst. U.S. Atty., Hartford, Conn., for defendant.

**In re Grand Jury Proceedings George CRUZ, known as Kar Gard.**

No. Civ. H 83–188.
Misc. Civ. No. H–83–1.

United States District Court,
D. Connecticut.

April 12, 1983.

RULING ON PETITIONER'S MOTION
TO QUASH SUBPOENA
DUCES TECUM

CLARIE, Senior District Judge.

The petitioner, the State Commissioner of Revenue Services for Connecticut, has moved to quash a Federal Grand Jury subpoena duces tecum requesting certain Connecticut state tax records. The Commissioner resists the subpoena on the grounds that the tax records are confidential under state statutes and that these statutes create a privilege that should be recognized in federal court, pursuant to Rule 501, Federal Rules of Evidence. The Court finds that a qualified privilege for these records does exist under Rule 501. The State's motion to quash the subpoena duces tecum is

granted, unless within ten (10) days the Grand Jury, through the United States Attorney, has submitted an affidavit pursuant to 26 U.S.C. § 6103, the contents of which are sufficient to overcome the statutory qualified privilege.

### Discussion

The Grand Jury is conducting a nontax criminal investigation of a business related arson and has subpoenaed certain state tax records to assist its investigation. Several Connecticut state statutes, Conn.Gen.Stat. §§ 12–15, 12–240, and 12–426(6), make those records confidential and operate to forbid their disclosure.[1] The petitioner contends that those statutes create a privilege that should be recognized in federal court, pursuant to Rule 501. That rule states, in pertinent part:

> "[T]he privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of common law as they may be interpreted in the courts of the United States in the light of reason and experience."

The Federal Government denies that any privilege should be recognized. It represents that inasmuch as the Federal Grand Jury is a product of the Fifth Amendment to the Federal Constitution, the Supremacy Clause, Article VI, Cl. 2, necessitates that the superior authority of the Federal Constitution control all conflicts between state confidentiality provisions and constitutional investigatory powers, and that all Grand Jury subpoenas should therefore be upheld in the face of contradictory state statutes.

It also cites the general proposition that "[p]rivileges are strongly disfavored in federal practice." *American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1344 (5th Cir.1981). Principally, however, the Government relies on *United States v. King,* 73 F.R.D. 103 (E.D.N.Y.1976), which denied a motion to quash a Federal Grand Jury's subpoena of local tax records.

In *King,* the Grand Jury subpoenaed certain New York City income tax returns in connection with its investigation into failure to declare federally taxable income from narcotics sales. The city's administrative code, which had the force and effect of state law, prohibited disclosure of these returns, and the city claimed a privilege under Rule 501. The Court began its analysis of the question of privilege by acknowledging the need for appropriate deference to state law:

> "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy. In this connection we recognize that the benefit of a state's promise of protection from divulgence is greatly attenuated when those who must choose whether to communicate or not in reliance on the local privilege know that the federal authorities may force public revelation at will." *Id.* at 105 (Citations omitted).

The Court then determined whether, under Rule 501, the dictates of "reason and

---

1. For example, § 12–426(6) states:

 (6) *Divulging of information forbidden.* Neither the commissioner, his attorney or agent nor any other officer or employee engaged in the administration of this chapter shall make known in any manner whatever the business affairs, operations or information obtained by an investigation of records and equipment of any retailer or any other person visited or examined in the discharge of official duty, or the amount or source of income, profits, losses, expenditures or any particular thereof, set forth or disclosed in any return, or permit any return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person, except for purposes of photostating or microfilming; provided the governor may, by general or special order, authorize examination of the returns by other state officers, by tax officers of another state, by the federal government, if a reciprocal arrangement exists, or by any other person. Successors, receivers, trustees, executors, administrators, assignees and guarantors, if directly interested, may be given information as to the items included in the measure and amounts of any unpaid tax or amounts of tax required to be collected, interest and penalties. Any person who violates any provision of this subsection shall be fined not more than one thousand dollars."

experience" required the recognition of the local privilege in the particular circumstances of that case. It took as its point of departure the four tests developed by Wigmore for determining whether a privilege should be recognized, although it substantially reworked these tests:[2]

"first, the federal government's need for the information being sought in enforcing its substantive and procedural policies; second, the importance of the relationship or policy sought to be furthered by the state rule of privilege and the probability that the privilege will advance that relationship or policy; third, in the particular case, the special need for the information sought to be protected; and fourth, in the particular case, the adverse impact on the local policy that would result from nonrecognition of the privilege." *Id.* at 105.

Applying the facts of that case to these four factors, the Court denied the motion to quash the subpoena, concluding: "The balance of relevant factors in this case clearly falls on the side of compelled disclosure." *Id.* at 109.

The Government urges this Court to apply the four *King* factors to the circumstances of this case, certain that such an application will result in the Court's upholding the subpoena.[3] Since[4] the decision in *King,* however, Congress passed the Tax Reform Act of 1976, Public Law 94–455, § 1202, now codified at 26 U.S.C. § 6103(i)(1), which reads:

"(i) *Disclosure to Federal officers or employees for administration of Federal laws not related to tax administration.—*

(1) *Nontax criminal investigation.—*

(A) *Information from taxpayer.—*A return or taxpayer return information shall, pursuant to, and upon the grant of, an ex parte order by a Federal district court judge as provided by this paragraph, be open, but only to the extent necessary as provided in such order, to officers and employees of a Federal agency personally and directly engaged in and solely for their use in, preparation for any administrative or judicial proceeding (or investigation which may result in such a proceeding) pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party.

---

2. Wigmore states:

"[F]our fundamental conditions are recognized as necessary to the establishment of a privilege against the disclosure of communications:

(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The relation must be one which in the opinion of the community ought to be sedulously *fostered.*

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation.

*Only* if these four conditions are present should a privilege be recognized." Wigmore, Evidence § 2285 (McNaughton Rev.1961).

3. Even if the four factors developed in *King* were the appropriate tests to apply to this case, they produce a result in this case which, unlike that in *King,* does not clearly fall on the side of compelled disclosure. That the application of the third and fourth factors tipped the balance toward disclosure in *King* hinged largely on the particular circumstances there of the logically intertwined actions of filing local and federal tax returns. The Court found that:

"Since the requirement to file state and city tax returns is similar to the federal revenue provisions, a scheme to evade federal taxes by filing false returns or no returns would *almost necessarily* include consistent action concerning state and city returns.

. . . .

"[I]t is not sensible to decide this case on the remote possibility that a taxpayer bent on fraud would file candid city, but not federal and state, returns showing illegal income, because of the city's limited promise of privilege." *Id.* at 108, 109 (Emphasis added). No such conclusions can be made in this case, which presents an investigation into *nontax* crime.

4. In fact, the Tax Reform Act of 1976, Public Law 94–455, became law on October 4, 1976; the *King* decision was not announced until December 29, 1976. The Court did not address the new standards of confidentiality and privilege created by Congress, however, in its decision.

(B) *Application for order.*—The head of any Federal agency described in subparagraph (A) or, in the case of the Department of Justice, the Attorney General, the Deputy Attorney General, or an Assistant Attorney General, may authorize an application to a Federal district court judge for the order referred to in subparagraph (A). Upon such application, such judge may grant such order if he determines on the basis of the facts submitted by the applicant that—

(i) there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed;

(ii) there is reason to believe that such return or return information is probative evidence of a matter in issue related to the commission of such criminal act; and

(iii) the information sought to be disclosed cannot reasonably be obtained from any other source, unless it is determined that, notwithstanding the reasonable availability of the information from another source, the return or return information sought constitutes the most probative evidence of a matter in issue relating to the commission of such criminal act.

However, the Secretary shall not disclose any return or return information under this paragraph if he determines and certifies to the court that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation."

If the Court in *King* was free to create its own balancing test to determine whether to recognize a state privilege in a criminal tax investigation, federal courts are no longer writing on an entirely blank slate, in view of § 6103, on the issue of privilege in a nontax criminal investigation, in their efforts to chart a federal evidentiary common law of privileges. While *King* judicially created a balancing test in the absence of other federal guidelines, Congress, in enacting § 6103, has now *legislatively* balanced

the importance of disclosure in a federal prosecution against the value of confidentiality, and has established, with specific guidelines, a qualified privilege for the procurement of federal tax information.

The question then becomes whether "in the light of reason and experience," the congressionally recognized qualified privilege in § 6103, regarding federal tax information, should also be recognized to protect, with qualifications, confidential state tax information requested in a federal nontax criminal investigation. The two decisions that have addressed this specific issue, *In re Hampers*, 651 F.2d 19 (1st Cir.1981), and *In re Grand Jury Empanelled January 21, 1981*, 535 F.Supp. 537 (D.N.J.1982), have both answered in the affirmative.

*Hampers* involved, as here, an investigation into arson, and a Federal Grand Jury subpoena of confidential Massachusetts state tax information. Under Rule 501, the Court extended the qualified privilege of § 6103 to the state records and remanded the case to the district court to determine whether, in light of the three factors stated in § 6103(i)(1)(B), the qualified privilege could be overcome.

In *Grand Jury Empanelled January 21, 1981*, a Federal Grand Jury subpoenaed confidential New Jersey tax returns to assist in its nontax criminal investigation into local racketeering. The district court recognized the state's claim of privilege under Rule 501 and adopted the standards set out in § 6103. Moreover, it found insufficient, in terms of the requirements of § 6103(i)(1)(B), an affidavit which merely stated: "[T]he records sought are relevant and necessary to the investigation and are not sought for any purpose other than to further the Grand Jury investigation." *Id.* at 538. Accordingly, the Court quashed the subpoena, without prejudice to the Government's right to make a subsequent showing sufficient to overcome the qualified privilege.

The Court finds that the qualified privilege established for federal tax information in § 6103 should be extended, under Rule 501, to confidential state tax informa-

tion. In so finding, the Court follows the trenchant rationale enunciated by the First Circuit in *In re Hampers:*

"Being charged as we are under Rule 501 to look to reason and experience in charting a federal evidentiary common law, we think the key has already been forged by the Congress in legislating in 26 U.S.C. § 6103(i)(1) the conditions under which federal tax information may be available to federal officials for non-tax criminal purposes. The deliberate judgment of the legislature on the balancing of the societal interests in detecting, preventing, and punishing criminal activity, in safeguarding individuals' interests in privacy, and in fostering voluntary compliance with revenue reporting requirements, seems to us a legitimate if not compelling datum in the formation of federal common law in this area.

We see no reason why, if federal prosecutions are not unduly hindered by the restraints of § 6103, they would be so hindered by applying the same rules to state tax returns. We see a positive virtue in avoiding either any circumvention of § 6103 or inconsistency in rules of access to federal and state tax information. And we see value in preserving in this small area the postures of comity and deference arising from federalism." *Id.* at 23 (Citations omitted).

 The Court finds that the Commissioner of Revenue Services enjoys a qualified privilege under Rule 501 of the Federal Rules of Evidence, in light of the state nondisclosure statutes. Following the requirements of § 6103, in order to enforce a subpoena in a federal criminal investigation of nontax crime,

"a federal grand jury must proffer reasonable cause to believe that a federal crime has been committed, that the information sought will be probative of a matter at issue in the prosecution of that crime, and that the same information or equally probative information can not be obtained elsewhere through reasonable efforts." *Hampers,* at 23.

Even in the denial of a motion to quash, in *King,* on which the Government heavily relies, the Court acknowledged at the outset, a requirement of a showing of particular relevance and need:

"The imperative need of the states and their subdivisions to efficiently administer their own fiscal operations militate [sic] strongly against action by a district court that might interfere with a state tax program, in the absence of *a showing of genuine government need for subpoenaed material.*" *Id.* at 105 (emphasis added).

No such showing has as yet been made here. Accordingly, the motion to quash the subpoena duces tecum is granted, unless within ten (10) days the Grand Jury has submitted an affidavit, meeting the required showing of § 6103(i)(1)(B), and sufficient to overcome the qualified privilege.

SO ORDERED.