In re GRAND JURY SUBPOENA DATED NOVEMBER 14, 1989.

Misc. No. 16107.

United States District Court, W.D. Pennsylvania.

Jan. 8, 1990.

William V. Conley, Asst. U.S. Atty.

Edward P. Carey, Regional Counsel, Dept. of Public Welfare, Office of Legal Counsel, Pittsburgh, Pa.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before the Court is the Government's Motion to Enforce Grand Jury Subpoena. For the reasons that follow, we will deny the motion.

## I. BACKGROUND

A federal grand jury sitting in Pittsburgh, Pennsylvania is investigating a heroin and cocaine distribution ring. In addition to considering violations of the drug laws, the grand jury is also investigating for possible violations of the federal tax laws.

On March 30, 1989, the Government subpoenaed the records of 12 individuals allegedly receiving public assistance from the Pennsylvania Department of Welfare ("DPW"). Subsequently, the Government cancelled the subpoena because it learned that federal regulations to certain public assistance programs such as Aid to Families with Dependent Children ("AFDC"), the Medical Assistance Act and the Food Stamp Act, prohibited blanket disclosure.

Thereafter, the Government issued the instant subpoena, requesting the records and files of 5 individuals allegedly receiving public assistance. The subpoena specifically excluded any records pertaining to the AFDC program. On November 2, 1989, Edward Carey, Regional Counsel for DPW at the Pittsburgh, Pennsylvania office, accepted service of the subpoena. An investigation of the subpoenaed records revealed that one individual had no record, one received AFDC benefits, two received food stamps and medical assistance, and the fifth individual received both food stamps and general assistance, a state funded program. Conceding that it was not entitled to the records of the individuals receiving federally funded public assistance, the Government amended its request to those records of the one individual who received both general assistance and food stamps.

When Mr. Carey appeared before the grand jury on November 14, 1989, he refused to produce the records of the individual receiving food stamps and general assistance. Citing Pennsylvania regulations, Mr. Carey explained that like the federal regulations, Pennsylvania law prohibited the disclosure of the records of a general assistance recipient. Alternatively, he maintained that the food stamp portion of the record was inseparable from the general assistance portion of the record, and that he was unable to divulge this information pursuant to the Food Stamp Act confidentiality regulation.

The Government, believing that it is entitled to the records of the general assistance recipient, has filed the instant motion to enforce its subpoena. In support of its motion, the Government asserts that, "the statutes of the Commonwealth of Pennsylvania are not controlling where a person is accused of a violation of federal law." Government's Memorandum, at 3. In addition, the Assistant United States Attorney has attached a *Schofield* affidavit stating that the records sought are necessary and relevant to the investigation and are "being sought for no other purpose than that indicated within this affidavit." Affidavit of William V. Conley, Esq., Attachment C; *see In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir.1973) (*Schofield I*); *In re Grand Jury Proceedings*, 507 F.2d 963 (3d Cir. 1975) (*Schofield II*).

## II. ANALYSIS

The Fifth Amendment to the United States Constitution requires a grand jury indictment for the institution of federal

criminal prosecutions for capital or other serious crimes. The grand jury thus has the "dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). Recognizing the grand jury's role in fair and effective law enforcement, the United States Supreme Court has held that the grand jury's investigative powers are broad. *Id.*, 408 U.S. at 688, 92 S.Ct. at 2660; *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974).

However, the grand jury does not have unlimited investigatory power. The scope of its powers is narrowed by the "long-standing principle that 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege...." *Id.*, 408 U.S. at 688, 92 S.Ct. at 2660 (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)).

DPW contends that the federal grand jury subpoena unconstitutionally intrudes into the reach of state sovereignty because as a matter of state law, the state records are privileged from subpoena. In addition, DPW maintains that Pennsylvania law prevents it from releasing the records without an order from a court of competent jurisdiction.

■ The *raison d'etre* for a federal grand jury, however, is found in the Fifth Amendment to the United States Constitution. Under the Supremacy Clause, Article VI, Clause 2, the superior authority of the federal Constitution controls the conflict between state nondisclosure laws and federal investigatory powers. In addition, as the Government correctly points out, Rule 501 of the Federal Rules of Evidence provides that federal, not state, privilege law applies in criminal cases brought in federal court. Thus, the fact that an evidentiary privilege under the Pennsylvania statute exists which DPW could assert in a criminal prosecution in state court, does not compel the court to recognize this privilege

in federal criminal proceedings. *United States v. Gillock*, 445 U.S. 360, 368, 100 S.Ct. 1185, 1191, 63 L.Ed.2d 454 (1980).

Rule 501 of the Federal Rules of Evidence provides in relevant part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

This rule grants to the federal judiciary the responsibility of developing recognized privileges and formulating new privileges by resorting to the principles of common law interpreted "in the light of reason and experience." Rule 501 thus allows for the flexible development of the federal common law of privilege on a case-by-case basis. *Gillock*, 445 U.S. at 367, 100 S.Ct. at 1190.

■ In developing the federal common law of privilege, federal courts attempt to balance the public's need for the full development of relevant facts in federal litigation against the need for confidentiality in order to achieve the objectives underlying the privilege claimed. *Matter of Grand Jury Impaneled January 21, 1975*, 541 F.2d 373, 382 (3d Cir.1976). In addition, as a principle of comity, federal courts recognize state evidentiary privileges as long as federal substantive and procedural policy is not impaired. *In re Production of Records to Grand Jury*, 618 F.Supp. 440, 442 (D.Mass.1985); *Schafer v. Parkview Memorial Hospital.*, 593 F.Supp. 61, 63 (N.D.Ind.1984); *In re Grand Jury Empanelled January 21, 1981*, 535 F.Supp. 537, 541 (D.N.J.1982).

The claim of privilege at issue in this case arises from a state statute. Specifically, the Pennsylvania legislature has granted to the DPW the authority to make and enforce regulations concerning the protection of information obtained in the wel-

fare process. 62 Pa.Stat.Ann. § 404. Section 105.1(f) of the Pennsylvania Code provides:

> No individual may have direct access to the records of the Department unless that individual has an official connection with any part of the Department, or is an employe of the Auditor General's Department, the Treasury Department or another Commonwealth or Federal agency officially charged with administrative supervision, review, evaluation or audit. Morevoer, this access to records is confined to materials essential to carrying out the official functions of the Department or agency involved; however, employees of agencies who are engaged in investigation of welfare fraud will in no way be prohibited access to case records. No individual may have direct access to his own case record except as provided in (Section) 105.5 (relating to access by an individual to his case file).

55 Pa.Code 105.1(f).

The privilege created by this regulation, termed a "required reports privilege," stems from a state law which requires citizens to reveal personal information under a promise of confidentiality. 2 J. Weinstein & M. Berger, *Evidence*, 502(02), at 502–5 ("Weinstein's Evidence"). In the United States, many statutes and regulations prohibit disclosure of certain records containing information which citizens are compelled legally to submit to federal, state or local governments. These statutes generally are tied to specific regulatory areas such as income tax returns, census reports, selective service records, public health records and accident reports, among others. 2 Weinstein's Evidence, 502(02), at 502–5. The purpose of the grant of such a privilege is to encourage persons to report voluntarily and accurately private information that is needed for effective governmental functioning. *In the Matter of Grand Jury Impaneled January 21, 1975*, 541 F.2d 373, 380 (3d Cir.1976).

Thus, the precise question before this Court is whether, in light of reason and experience, we should adopt, as a matter of federal common law, the proposition that public assistance records, required to be filed by state law under assurances of confidentiality, are privileged against use in federal grand jury proceedings.

Apparently, no reported decisions of a federal court have addressed the Pennsylvania statute and regulations at issue in this case. However, several federal courts have followed similar state statutes in federal grand jury proceedings, holding that under principles of federal common law, a person filing records under a state required reports law has a privilege against use of those records in any phase of a federal criminal proceeding. *In re Hampers*, 651 F.2d 19 (1st Cir.1981) (state income tax records); *In re Grand Jury Subpoena*, 626 F.Supp. 1319 (M.D.Pa.1986) (state legislative records); *In re Production of Records to Grand Jury*, 618 F.Supp. 440 (D.Mass. 1985) (social worker records); *Schafer v. Parkview Memorial Hospital*, 593 F.Supp. 61 (N.D.Ind.1984) (peer review records); *In re Cruz*, 561 F.Supp. 1042 (D.Conn.1983) (state income tax records); *In re Grand Jury Empanelled January 21, 1981*, 535 F.Supp. 537 (D.N.J.1982) (state income tax records); *United States v. King*, 73 F.R.D. 103 (E.D.N.Y.1976) (local income tax records).

For example, in *In re Grand Jury Empanelled January 21, 1981*, 535 F.Supp. 537 (D.N.J.1982), the United States District Court for the District of New Jersey accorded state revenue officials a qualified common law privilege from disclosure of information sought by a federal grand jury investigating non-tax crimes. In that case, the New Jersey Division of Taxation ("Division") resisted compliance with a federal grand jury subpoena which required it to deliver "copies of all franchise tax returns filed by or for" a certain company which was under investigation for federal non-tax crimes. *Id.*, 535 F.Supp. at 538. The Division contended that a state statute absolutely prohibited disclosure of the subpoenaed information. *Id.*, 535 F.Supp. at 540. The state statute was similar to a federal statute prohibiting disclosure, except that the federal statute permitted the release of the information in federal non-tax investigations upon federal court order after the

applicant demonstrated certain facts to the court. *Id.*

After weighing New Jersey's desire to protect and promote voluntary reporting of accurate tax information against the grand jury's duty to fully investigate the alleged criminal activity, the court recognized a qualified privilege under Fed.R.Evid. 501, due to the state statute. *Id.*, 535 F.Supp. at 542. However, instead of adopting the state statute, the court modeled the privilege after the federal statute, reasoning that the federal grand jury's interests were sufficient to preclude the adoption of an absolute privilege. The court concluded that under the newly created privilege, in a non-tax investigation the grand jury must demonstrate its substantial need for the material sought in order to gain access to the tax returns. *Id.*, at 541.

The United States Court of Appeals for the Third Circuit rejected the adoption of a required reports privilege in *In the Matter of Grand Jury Impaneled January 21, 1975*, 541 F.2d 373 (3d Cir.1976). In that case, a federal grand jury subpoenaed attorney-client retainer agreements which were required to be filed with the state court. *Id.*, 541 F.2d at 375. The Prothonotary refused to disclose the agreements, arguing that a local rule of court prohibited such disclosure. *Id.*, 541 F.2d at 376.

The Court of Appeals balanced the state's interest in encouraging the voluntary filings of retainer agreements against the public interest in effective law enforcement, and held that no privilege would attach under these factual circumstances. *Id.*, 541 F.2d at 382. Noting that the group subject to the filings requirement was small and that other effective means existed to ensure accurate filing, the court held, "in our view the state's interest in voluntary compliance will not be seriously impaired by enforcing the instant grand jury subpoena." *Id.*, 541 F.2d at 383–83. Clarifying its ruling, the court stated:

> We also have not decided that a federal court will never recognize a state required reports privilege as a matter of federal common law in a federal grand jury investigation. Perhaps there may

be instances that will present compelling justifications for denying a federal grand jury relevant information; such justifications were not presented here.

*Id.*, 541 F.2d at 383.

Like *In re Grand Jury Empanelled January 21, 1981, supra,* the instant case deals with welfare matters in which both state and federal policy requires confidentiality and the public in general has a legitimate expectation that their state and federal welfare records will remain confidential. For example, in the administration of the state general assistance program, the Pennsylvania legislature has expressed a policy of confidentiality by delegating to the DPW "the power to make and enforce regulations:"

> (1) To protect the names of applicants for and recipients of public assistance from improper publication, and to restrict the use of information furnished to other agencies or persons to purposes connected with the administration of public assistance....

62 Pa.Stat.Ann. § 404.

Similarly, in the administration of the food stamp program, Congress has directed states to take "safeguards which limit the use or disclosure of information obtained from applicant households to persons directly connected with the administration or enforcement of the provisions of this chapter...." 7 U.S.C. § 2020(e)(8).

DPW considers the state statute and regulations to establish a privilege which prevents disclosure of general assistance records, absent a court order. 55 Pa.Code 105.4(b)(3). At least one Pennsylvania case supports this proposition, *Spangler v. Spangler,* 12 Pa.D. & C.3d 290, 292–94 (1978), and the Pennsylvania legislature has spoken clearly about privileged communications between the DPW and a client. 62 Pa.Stat.Ann. § 404; 55 Pa.Code 105.1 *et seq.* Accordingly, we conclude that the Pennsylvania statute and regulations create a privilege under Pennsylvania law.

Having ascertained that Pennsylvania interprets the confidentiality regulations as a required reports privilege in state criminal proceedings, our next task is to balance the

competing interests to determine whether "in light of reason and experience" we should adopt this state statutory privilege as a federal privilege. If we decide, as a matter of federal common law, that a privilege exists, we must then define the scope and content of the privilege. We now examine the competing interests.

Pennsylvania provides general assistance welfare benefits to all of its needy and distressed citizens. When an individual applies for general assistance, the completed application contains intensly personal information concerning his or her circumstances. Although "the Department often requires information from and regarding clients which is of a highly personal nature," it ensures clients that it "will take precaution against their being exploited for commercial or political reasons." 55 Pa. Code 105.1(c)(1).

To safeguard confidentiality, the DPW has promulgated procedures for the use and disclosure of information outside of the Department. The objective of the procedures, "is to permit the maximum use of information collected from and about a client to determine his eligibility for assistance, and still preserve, insofar as possible, that relationship of confidence between the Department and its clients and the Department and the public at large, which is vital to efficient administration." 55 Pa.Code 105.1(b)(1).

The regulations specifically provide that, "information may be disclosed on proper judicial order." 55 Pa.Code 105.4(b)(3). However, if the order or subpoena is for a purpose other than investigating fraud within the department, legal counsel is to notify the court that the regulations prohibit the disclosure of information contained in records and files. 55 Pa.Code 105.4(b)(3)(iii). The regulations clearly state that DPW will be governed by final court order. 55 Pa.Code 105.4(b)(3)(iv).

We believe that the state has a strong interest in ensuring that general assistance recipients report accurate and complete information regarding their personal circumstances which qualify them for such assistance. Without a promise to keep the communications confidential, recipients might refuse to divulge honest information, impairing the integrity and efficiency of the public assistance program.

On the other hand, the Government's interest in fully investigating the alleged criminal activity is weakened by the fact that the information sought is not for the purpose of investigating welfare fraud, but for the alleged tax evasion. Ostensibly, the information sought in the subpoena is only corroborative of what investigators have alleged based on other information, and is probably obtainable from sources other than general assistance records.

In addition, Congress has enacted similar confidentiality provisions for the Food Stamp Act, Aid to Families with Dependent Children, and the Medical Assistance Act. For example, Section 272.1(c) of the Code of Federal Regulations, Title 7, which governs the administration of the Food Stamp program, provides:

(c) Disclosure. (1) Use or disclosure of information obtained from food stamp applicant or recipient shall be restricted to: (i) persons directly connected with the administration or enforcement of the provisions of the Food Stamp Act or regulations, other Federal assistance programs, federally-assisted State programs providing assistance on a means-tested basis to low income individuals, or general assistance programs which are subject to the joint processing requirements in 273.2(j)(2).

7 C.F.R. 272.1(c)(1)(i).

Moreover, 7 C.F.R. 272.1(c)(1)(v) restricts disclosure to local, state or federal law enforcement officials only for the purpose of investigating an alleged violation of the Food Stamp Act or regulations. This provision manifests a strong congressional intent to maintain the confidentiality of recipient files. If, as Congress has determined, federal prosecutions are not unduly hindered by the restraints of 272.1(c)(1)(v), then certainly they would not be hindered by the restraints of a similar state regulation prohibiting disclosure.

Accordingly, we hold that DPW (and indirectly, its client) enjoys a privilege under Rule 501 because of the state nondisclosure statute and accompanying regulations. However, we do not believe that the state's interest in effective administration of public assistance is so strong as to accord an absolute privilege to the DPW. For example, if the public assistance records contained the only available information to resolving a federal crime, the balance might tip in favor of the Government's interest in detecting and punishing criminal activity. If, however, the information was obtainable elsewhere, or if it merely was corroborative of other evidence, then the state's interest would weigh more heavily. *In re Hampers*, 651 F.2d 19, 23 (1st Cir.1981).

This Court is persuaded that a qualified common-law privilege should be accorded in the circumstances of this case. In defining the content of the privilege, we believe that the federal statutory scheme established in 26 U.S.C. § 6103(i)(1), which permits disclosure of federal tax return information in non-tax criminal investigations only on the order of a federal judge, provides a useful model. Under that section, an applicant must demonstrate to the judge that: 1) reasonable cause exists to believe a crime has been committed; 2) reason to believe the information is probative evidence of a matter in issue concerning the criminal act; and 3) that the same information or equally probative information cannot be obtained elsewhere through reasonable efforts.

We agree with the other courts which have adopted this standard in that it accommodates both the public policy of the state in maintaining the confidentiality of public assistance records, and the public policy for the effective and fair prosecution of federal crimes. *In re Hampers*, 651 F.2d 19, 23 (1st Cir.1981); *In re Production of Records to Grand Jury*, 618 F.Supp. 440, 444 (D.Mass.1985); *In re Grand Jury Empanelled January 21, 1981*, 535 F.Supp. 537, 542 (D.N.J.1982). The court will set aside the privilege if the United States submits an affidavit stating: 1) it has reasonable cause to believe a federal crime has been committed; 2) the information sought is probative of a matter at issue in the prosecution of the crime; and 3) the same information or equally probative information cannot be obtained elsewhere through reasonable efforts.

Applying the requirements to the facts of this case, we hold that the *Schofield* affidavit is inadequate to overcome the qualified privilege recognized in this case. We will thus deny the Government's motion.

An appropriate Order will issue.